"in writing," making it read "account acknowledged in writing."

In the article of the Code Napoleon corresponding to our article 3503 (now article 3508) the term "compte arrêté" was used, and that term was brought over into our Code; but in the English text the words "account acknowledged" were inserted as being a translation of the same. The exact meaning and effect of that term (so translated) in our Code had given rise to considerable divergence of opinion prior to the act of 1888; some persons holding that accounts whose original characteristics caused them to fall under the three-year prescription ceased to be subject to that prescription if once acknowledged, whether verbally or in writing, and thereby became subject thereafter to the prescription of ten years.

So that a person who succeeded in having the account which he held once acknowledged verbally or in writing could securely rest upon that acknowledgment to keep it alive, freed from prescription, for ten years thereafter. We think the act of 1888 was intended to prevent that result. We do not think it was the intention of the General Assembly to cut off absolutely "interruptions" of prescriptions under the short prescriptions unless the evidence thereof in writing should be produced, while allowing parol evidence to be introduced to establish the interruptions of prescription upon claims or debts evidenced by writings to which the longer five-year prescription is applicable.

The present decision in no wise departs from that of Sleet v. Sleet, 109 La. 303, 33 South. 322.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the Court of Appeal herein brought up for review be, and the same is hereby, annulled and reversed, the plea of prescription filed by the defendant is overruled and rejected, the case is reinstated in the Court of Appeal, and this cause is remanded to that court for further proceedings according to law.

MONROE, J., dissents.

---

(46 South. 697.)

No. 16,854.

Succession of RODER.

(May 11, 1908.)

1. INSURANCE — RIGHT TO PROCEEDS — LIFE POLICY—CHILDREN AS BENEFICIARIES.

The plaintiff in rule sued for the possession of two insurance policies made in favor of the surviving children of the insured and others.

2. SAME—NOT GRANDCHILDREN.

The defense in rule sets out that the grandchildren are entitled to a proportion of the proceeds on these policies corresponding to their interest in the succession of the insured.

3. SAME—INTEREST IN THE POLICY.

The beneficiaries are the surviving children. The three children who departed this life prior to the insured are not included among the beneficiaries, nor the grandchildren.

4. SAME—QUESTION OF INTEREST.

The words used to designate the beneficiaries show that the surviving children were those intended. The policy provided, further, if there are no surviving children, then to the executors, administrators, or assigns of the insured.

5. SAME — EXECUTORS, ADMINISTRATORS, OR ASSIGNS OF INSURED.

The assured made the policy payable to his wife; if she died, then to the children surviving, then to his succession, without reference to grandchildren.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George Henry Théard, Judge.

In the matter of the succession of Frank Roder. Rule by Frank J. Roder for the possession of policies of life insurance. Mrs. C. A. Tessier and others appeared. From a judgment for Frank J. Roder, they appeal. Affirmed.

Dinkelspiel, Hart & Davey, McCloskey & Benedict, and Henry L. Favrot, for appellants. Dart & Kernan, for appellee executrix. Ernest Touro Florance, for other appellees.

BREAUX, C. J. This is a demand by the grandchildren of the late Frank Roder for recognition of their asserted rights to part of the proceeds of insurance on his life.

The record informs us that the insured departed this life testate on February 23, 1907.

Two sons survive him, Henry and Frank, and grandchildren, descendants of three daughters. These grandchildren are Theresa, wife of Henry Baudin, and Ruth, wife of Chas. A. Tessier, sole surviving children of Caroline J. Roder (daughter of the late Frank Roder), who was the wife of George Jargens. She died April 8, 1884. Another of these grandchildren is Argentine M. Anderson, only child of Mrs. Amelia Roder, another daughter of the late Frank Roder, who died on January 25, 1907; and the others are Ernest J. Coullon and Marie Louise Coullon, the only surviving children of the late Emma Roder, another daughter, who died on March 31, 1901.

After the death of the first wife of Frank Roder (Mrs. Theresa Roder) he was twice married. He left no children by either of the last two marriages.

The surviving widow of Frank Roder, Mrs. Emilie Eyre, was his executrix and universal legatee.

On March 11, 1872 (at which time the first wife was living), the late Frank Roder insured his life with the Equitable Life Insurance Company of the United States, in the sum of $10,000.

At that date all of his children were living.

The beneficiaries of the policy issued to him were his wife, if living, and, if not living, then the children of the assured. If no children were living, then the executors or assigns of the assured.

The insurance company promised to pay the amount of the total insurance at its office in New York to the beneficiary or beneficiaries.

Frank J. Roder, son of the late Frank Roder, proceeded by rule in this case for the possession of the two policies in question, containing the conditions just above stated, issued by the Equitable Life Insurance Company, as stated. He in effect denied the right of the grandchildren to recover on these policies.

The testamentary executrix was made a party to this rule.

She appeared in defense, and alleged among other things, that she had no interest, and asked that the demand against her be dismissed.

The grandchildren then appeared, and in separate answers substantially alleged that it was not the intention of their grandfather, Frank Roder, to prefer any of his children or grandchildren by the use of the word "surviving," but that his whole idea was to treat all alike; that "children," the word used in the policy in the alternative of the grandmother, included the grandchildren as well. These appearers, the grandchildren, controverted generally the exclusive right claimed by the plaintiffs in rule.

The asserted rights of the heirs of Mrs. Theresa Roder, the beneficiary, will be considered by us in the first place.

These rights are to be settled as from the date she departed this life. Under the terms and conditions of the policy, the capacity of the wife, the beneficiary, to receive, was made conditional upon her existence at the date of the death of her husband. As she did not outlive her husband, the proceeds could not go to her. She acquired no rights save on the condition stated, nor did her succession acquire any right at her death.

The children of predeceased mothers (the deceased daughters of the late Frank Roder) could not inherit by representation of their mothers, as the mothers had not acquired any rights. The children of the assured, the

living children alone, could take under the title. Sevier v. Douglas, 44 La. Ann. 611, 10 South. 804.

One of the policies was issued to the second wife of Frank Roder, to which the appellants (the defendants in rule, the grandchildren) make no claim. A paid-up policy was taken out, instead of the original policy which had been issued to the second wife, as just mentioned, and her name was not specially mentioned in taking out the paid-up policy. We are not concerned with the beneficiary in that case. It does not present a question before us for decision.

It is sought, however, to strengthen the claim of the grandchildren, appellants here, by urging that the declaration as to the beneficiary in this policy—this policy which was replaced by taking out the "paid-up" policy—shows that the intention of the assured, the late Frank Roder, was different in securing the amount for his second wife, who had no children; that there was a difference as relates to the beneficiary and in the naming her in the paid-up policy.

We have considered that argument, and left it, without being at all convinced of its soundness. They were different contracts of insurance in favor of different beneficiaries.

The rights of the second Mrs. Roder are entirely different from those of Mrs. Theresa Roder as relates to insurance.

On that score it may be here stated that in exchanging the first policy, taken out in favor of Mrs. Theresa Roder, the first wife, and replacing by taking out a paid-up policy, Frank Roder, the assured, made it appear conclusively enough that he intended to insure, in case of the death of the predeceased wife, in favor of his surviving children; for he expressly uses the word "surviving" in describing the beneficiaries intended.

True, he could not make changes in the policy that had been issued in favor of his first wife. There was no change by the expression used in the paid-up policy taken in its place. It only made it appear more clearly that he intended to insure in favor of his living children in a certain contingency.

But the contention of the defendants in rule, the grandchildren, is, further, that the stipulation "that in the event of Mrs. Theresa Roder's prior death" must be considered as not written; otherwise, her ownership of the policy might be entirely divested.

Had Mrs. Roder outlived her husband, there would have been no divestiture of right from any source; but at her death all her rights ceased.

As the mother's (Mrs. Theresa Roder's) succession could not receive the amount (see Sevier Case, cited before), it remains for us to determine who is entitled to the amount of the policy.

If by naming children it includes the grandchildren, then the proceeds are to be divided among the children and the grandchildren in proportion to their respective rights. The grandchildren would then obtain a judgment in their own right and not by representation; for the latter, under the conditions of the policy, had no right.

The right of the children:

The scope and meaning of the word "children" has given rise to many discussions. There is a divergence of opinion on the subject.

We propose to review the decisions.

Among those that have impressed us is one by the Supreme Judicial Court of Massachusetts, in which it is stated with clearness and force that the word "child" as used in Gen. St. 1860, c. 91, § 1, subds. 3, 4, providing that the estate of an intestate who leaves no issue or father shall go in equal shares to his mother, brothers, and sisters, and to the children of any deceased brother or sister by right of representation, cannot be construed to include more remote issue, as it is not synonymous with issue, and does not

include the grandchildren of a deceased sister. Bigelow v. Morong, 103 Mass. 287, 288.

The rule laid down in the decision just cited applies here.

The Massachusetts decision from which we have quoted does not stand alone: "Child does not include grandchildren." Curtis v. Hewins, 52 Mass. (11 Metc.) 294.

Thus in South Carolina (Gadsden v. Poaug, 2 Bay, 293, 305) it was held that the word "children" does not include grandchildren; that the meaning and import of this word is the first descendant. The term "children" expresses the immediate offspring of parents. Turner v. Ivie, 5 Heisk. (Tenn.) 223, 230.

The Supreme Court of this state laid down the same meaning in holding that it does not include grandchildren, and it also held that the definition of Rev. Civ. Code, art. 3556, § 8, does not apply to contracts. It is restricted, the court held, to the articles of the Code, and goes no further. Wharton v. Silliman's Executors, 22 La. Ann. 343, 344.

True, the foregoing decisions relate to the interpretations of wills and statutes in which the word "children" was used to designate a class. But it is evident to us that the same rule applies to an instrument (a policy of insurance) in which "children" are named, without any expression to show that the intention was to include the grandchildren. But, on the contrary, in this instance the instrument contains expressions which show that it could not have been the intention to include the grandchildren. The words lead to the unavoidable inference that the intention in using the word "children," and in providing that in the case of their death the policy should inure to the benefit of the succession of the assured, represented by his executors, or to his assigns, was not to include grandchildren.

This last designation is entirely inconsistent with the idea that he intended the policy should inure to the benefit of children who had departed this life or to the benefit of their children; that is, his grandchildren.

The defense (the appellants) cite the decision in Continental Life Insurance Company v. Palmer, 42 Conn. 64, 19 Am. Rep. 530, with confidence.

The life insurance policy in that case was made payable to the mother, if living at the death of her husband; if not living, then to their children.

We excerpt the following from the decision:

"Therefore, as in wills of doubtful meaning, one construction being in harmony with the statute and the other contrary to it, preference is given to the former, so this contract should receive an interpretation, if possible, according to the law of descent."

The court, continuing, decides that the word "children" meant the grandchildren as well. The decision dwelt with that one word "children."

There was no one else in that policy included in the class of beneficiaries. But the court did not stop here. It added:

"Had such been her intention, it would have been easy to express it in unmistakable terms. Had the policy been payable to her surviving children, or to those who should be living at the death of the insured, it would have removed all doubt."

The terms of the policy here before us for decision in effect agree with the terms which the court holds in the cited case "would have removed all doubt." As this is an important point, the following from the policy in the pending case before us is reinserted:

"Payable to the children of said Frank Roder, or their guardian for their use, or, if there be *no such children* surviving, then to the executors, administrators, or assigns of said Frank Roder." (Our italics.)

Learned counsel cited five other decisions.

In justice to the argument in brief and at bar, we have specially consulted those decisions. They are in accord with the Connecticut case cited above, and do not militate against appellees' cause.

In the case from the Supreme Court of Kentucky, cited by appellants, it is said:

"That the word 'child' does not ordinarily embrace a grandchild, but should be so construed when the manifest intention of the maker of the instrument would otherwise be defeated, or the instrument rendered inoperative, or where other words show that the word was used in a more extended sense than that in which it is ordinarily used."

In the case pending before us for decision, we have seen that the word "surviving" is used, and limits the meaning to children.

Another decision, in the order in which they are cited, is completely parallel, counsel for defendant contend.

We are of opinion that it is parallel in some respects, especially in holding that inasmuch as the husband had insured his life for the benefit of his wife and children, and as he had no wife at the time, as to her the insurance was a nullity. The proceeds in that case were divided between children and grandchildren. There was nothing which limited the benefit to the living children. There was no direct parallel with our case, in which "grandchildren" were excluded by the mention of "living children."

In another decision quoted from by counsel for defendants and appellants the policy was made payable to the wife of the insured and the children, their executors. The child living when the policies were delivered, but who died before the insured, took a vested interest in the policies from the day that the policies were delivered, and "the interest passed the same as other personal assets." Such is not the jurisprudence of this state. Reference is made in the cited case to the executors of the beneficiaries. The expression that the benefit was intended for the child or his executor implied that in case of his death the benefit should go to his succession and to his heirs. There cannot be any such implication in the case here. The language used excludes it.

In still another decision, recently rendered, the policy was construed according to the laws of the state of Alabama. The beneficiaries were the wife and children, and here, again, to their executors and administrators, giving rise to the inference that it was the intention to leave it to the children and to their heirs. Woodworth v. Insurance Co. (Ala.) 45 South. 417.

In not one of the decisions cited by defendants and appellants, and which we have specially reviewed, was there any reference made to "children surviving," as in the policy here.

For reasons stated, the judgment appealed from is affirmed.