MAXWELL v. FOSTER.

1. STOCK.—PURCHASER FOR VALUE of bank stock assigned in blank without notice of equities existing between assignor and assignee takes the stock free from such equities.

2. IBID.—ESTOPPEL.—An assignee of stock in cases embraced in sec. 133 of Code may show acts of negligence, not known by him though known by his assignor, which estop the rightful owner from the assertion of his title.

3. R. R. & LUMBER Co. v. BANK, 48 S. C., 120. Affirmed.

4. STOCK—NOTICE—TITLE.—Transfer of stock not entered on books of corporation is good between the parties, and whether by such transfer the owner intended to part with the title, is a question of intention, and it is here found that the purchaser for value had such notice, which if pursued would have disclosed that the owner did not intend to part with the title by assignment in blank.

5. EQUITY.—DEFENSE OF PURCHASER FOR VALUABLE CONSIDERATION without notice is always equitable. *Aultman v. Utsey,* 41 S. C., 304, *overruled in part.*

Before WATTS, J., Greenville, 1902.    Reversed.

Action by John H. Maxwell against Robt. C. Foster *et al.*
The special referee, after stating the issues in his report,
says:

"The plaintiff being the owner of this stock and in pos-
session of said certificate in August, 1893, endorsed the said
certificate in blank and caused it to be delivered by said R.
C. Foster to one Lafayette Hogg to secure the note of the
plaintiff to said Hogg for one thousand dollars, given for
money borrowed by the plaintiff from him.    Thereafter the
plaintiff, through said R. C. Foster, acting as agent for his
wife, Mrs. Mary B. Foster, borrowed from said Mrs. Mary
B. Foster one thousand dollars, and executed and delivered
to her his note therefor.    He did not receive the money in
his hands from Mrs. Mary B. Foster, but instructed said R.
C. Foster to take said money to said Hogg and pay off said
note.    Said R. C. Foster, about June, 1894, did this and
received the said note and said certificate of stock from said
Hogg, and delivered the said note to the plaintiff, but did
not deliver to him the said certificate of stock, and has never
delivered it to him.    Thereafter, in December of the year
1894, the said R. C. Foster applied to the defendant National
Bank of Greenville, for a loan of eight hundred dollars, and
offered to pledge the stock represented by said certificate to
secure the payment of said loan.    He exhibited to the said
bank said certificate of stock, having the same in his posses-
sion, and also the signature of the plaintiff on the back
thereof, under the blank power of attorney printed on the
back of said certificate.    The plaintiff had written his name
under said power of attorney when he transferred the stock
to said Lafayette Hogg, as hereinbefore stated, and no
change whatever had been made in regard to said endorse-
ment since said time.    R. C. Foster told the bank he was
the owner thereof; and it made to him the loan so applied for
by him, lending him eight hundred dollars, taking his note
therefor and taking said stock in pledge to secure the pay-

ment thereof.    This was done without the knowledge or consent of the plaintiff, W. E. Beattie, who was at the time of the said transaction the cashier of the said bank, was the officer with whom said R. C. Foster had said transaction and to whom the above statement was made.

"Said R. C. Foster has never paid the said note except the interest; and there was due thereon on the 18th day of June, 1902, eight hundred and seven and 82-100 dollars, and said bank is still the owner and holder thereof.    If nothing else appeared, there would be no doubt that the defendant bank is entitled to hold said stock for the payment of the amount due it on said note by said R. C. Foster.    But while said W. E. Beattie was on the stand as a witness, counsel for defendants asked him the question: Q. 'Did you know of anything, Mr. Beattie, that would impeach the title of Mr. Foster to that property or his right to transfer that stock?' To this question Mr. W. E. Beattie answered: 'No, none at all.    I think I recollect at the time, I am not absolutely positive as to this, but that is my recollection, I think I advised him as to the advisability of having that stock transferred into his own name on the books of the American Bank at the time, and he told me, but as to this I am not positive, that Dr. Maxwell asked him to hold it in that shape and give him a reasonable time in which to redeem it.'    On cross-examination, counsel for plaintiff asked said W. E. Beattie this question: 'You say, Mr. Beattie, according to your recollection at the time Mr. Foster offered you this certificate of bank stock, endorsed by Dr. Maxwell, that you discussed with him the advisability of having the stock transferred upon the books of the American Bank?'    To this question Mr. Beattie answered: 'That is my recollection.'    Counsel for plaintiff next asked him: 'And that Mr. Foster told you that Dr. Maxwell had requested it to stand that way, so as to give him an opportunity of redeeming it?'    To which he answered: 'That is my recollection.'    Said W. E. Beattie, after the argument closed, was recalled by counsel for defendant bank, and testified as follows in regard to what

Foster said about Maxwell redeeming the stock: 'As I said in my testimony before, I am not absolutely clear in regard to my request at that time to have him get the American Bank to take up this certificate and issue a new one in his name, but my recollection is that I did make this request of him, and that his reply was, that Dr. Maxwell had requested him to keep the certificate in that shape, and give him an opportunity to redeem it. I am not attempting to state Foster's words, but the impression what he said left on my mind.'

"From this testimony it is argued by counsel for plaintiff that the defendant had notice of the rights of the plaintiff in the said stock. The argument is not that the bank had knowledge or express notice of the rights of the plaintiff, but that it had implied notice—that is, notice of such facts as would have led it by the exercise of due diligence to knowledge of the rights of the plaintiff. It is argued that from said testimony it appears that the bank had notice sufficient to put it on inquiry, and that it is affected with notice of all that such inquiry would have led to. It is argued that the use of the word 'redeem,' by Foster, or such word as made the impression on said W. E. Beattie that the plaintiff had requested the right to redeem the stock in its original shape, indicated that the plaintiff had some right therein, and of this the bank was bound to make inquiry.

"I have not found the law on the subject of implied notice more satisfactorily and clearly stated anywhere than in our own case of *Black* v. *Childs,* 14 S. C., pp. 321, 322. The law on this subject is there stated as follows: 'If there are circumstances sufficient to put a party upon the inquiry, he is held to have notice of everything which that inquiry properly conducted would certainly disclose, but constructive notice goes no further. It stands upon the principle that the party is bound to the exercise of due diligence, and is assumed to have the knowledge to which that diligence would lead.' So the crucial question here is, whether the bank had notice sufficient to put a person of ordinary prudence and

caution on the inquiry.    Whether or not it is sufficient, is a question of fact.    16 Am. and Eng. Enc. of Law, p. 796 (1st ed.).

"I was first inclined to decide that said statements of Foster were sufficient to put the bank on inquiry, but upon further reflection I have arrived at the conclusion that they were not sufficient to put the bank on inquiry.    The testimony is not that Foster said the plaintiff had the right to redeem the stock, or that he had promised him to allow him to redeem, but that Foster said the plaintiff had requested him to hold it in that shape and allow him a reasonable time in which to redeem it.    Mr. Beattie further testifies that he did not have any notice whatever of any rights that the plaintiff had in the stock.    He testifies that Foster gave him to understand that he was the owner, and the title was in him.    Mr. Beattie further testifies as follows: 'My understanding was that Mr. Foster was the absolute owner of the stock at that time; the transfer of Dr. Maxwell on the stock in blank confirmed me in that belief.'    Mr. Beattie further testifies that his recollection is, that Foster told him Maxwell had transferred it to him for a certain amount he owed him. Since it has developed that Foster was not the owner of the stock, the reasons which he gave for not transferring it into his own name on the books of the American Bank may seem significant of bad faith on the part of Foster, and it may seem that the bank should have so construed them.    After the event we can see many things which it seems plain indicated its approach, but which no prudence or diligence would have suspected before the event, was leading to it or indicated its approach.    The defendant bank had had many transactions with Foster, and had no reason to suspect his honesty. Regarding him as an honest man, what he said about Maxwell's request to be allowed to redeem was not sufficient to put the bank on inquiry, when what he thus said was coupled with the statement that he was the absolute owner, especially when these statements were accompanied by the production of the certificate of stock with Dr. Maxwell's unqualified

endorsement thereon, which is the usual evidence of absolute ownership.

"It was further insisted by counsel for the plaintiff that the statute under which the American Bank was created, charged the defendant bank with notice. And the case of *Railroad and Lumber Company* v. *The Bank of Charleston,* 48 S. C., 120, is cited to sustain this position. I do not think this case sustains the contention of counsel. I freely admit the proposition that the bank is chargeable with notice of everything contained in the act of the legislature under which said American Bank was created, but I do not think there is anything in that statute which charges the defendant bank with notice of the rights of the plaintiff in said stock.

"I, therefore, find that the defendant bank is the purchaser of said stock in good faith, and without notice of any rights of the plaintiff to the same.

"The defendant bank, on the 4th day of June, 1900, caused said blank power of attorney to be filed with the name of said R. C. Foster and said W. E. Beattie surrendered said original certificate and caused a new certificate to be issued in the name of said R. C. Foster, which is now held by said defendant bank.

"I, therefore, recommend that the plaintiff be given sixty days from the final judgment of the Court herein in which to redeem said stock, by paying the principal and interest due on said note of said R. C. Foster to said bank at time of said payment, and that upon such payment the said bank and said R. C. Foster properly endorse and deliver said certificate now held by said bank to the plaintiff, and that upon failure of the said plaintiff so to redeem said stock, the complaint herein be dismissed as to said bank.

"I further recommend that the plaintiff have leave to apply to this Court for judgment against the said R. C. Foster for the amount which he shall pay to redeem said stock, and also for the amount which he shall pay as the costs of this action.

"I further recommend that the defendant, R. C. Foster, be ordered to pay the costs of this action, and upon his failure

to do so within twenty days from final judgment herein, that the plaintiff pay said costs."

From Circuit order confirming report of referee, the plaintiff appeals.

*Messrs. Carey & McCullough,* for appellants, cite: *As to notice of facts sufficient to put party to enquiry:* Wade on Law of Notice, secs. 30, 18; 21 Ency., 2 ed., 585, 590; 3 Rich. Eq., 33; 34 S. C., 559; 48 S. C., 120; 14 S. C., 312; 34 S. C., 561; 19 L. R. A., 705; 23 Am. Dec., 52; 54 Am. Dec., 657; 1 You. and Coll., 303.

*Messrs. Ansel* and *Cothran & Cothran,* contra.    *Mr. Ansel* cites: *Bona fide purchaser of stock indorsed in blank is entitled to same:* Cook on Stock, &c., sec. 351; 46 N. Y., 325; 36 La. Ann., 585; 53 Tex., 162; 97 Pa. St., 153; 26 At. R., 302; 20 B. D., 194; 11 Rich. Eq., 344; 81 Pa. St., 19; 105 Ill., 436; 6 Daly, 129; 9 Beav., 333; 6 E. R., 877; 13 Mass., 105; 46 N. Y., 325; 101 U. S., 575; 15 Mass., 369; 36 N. Y., 395; 15 Wend., 637; 46 Barb., 222; 16 N. Y., 543; 9 How., 580; 10 Wall, 604; L. R. I. Q. B., 585; Owen, 123; Yelv., 178; Scott's C. B., n. s., 331; 93 U. S., 324; 11 S. C., 519. *Plaintiff is now estopped from asserting title by reason of his indorsement:* 1 Mor. on Priv. Corp., sec. 185; 11 Wall., 369; 3 Am. S. R., 591; Brig. on Est., 434; 65 S. C., 7. *Defendant bank is holder or pledgee without notice:* 56 S. C., 320; 12 Rich. L., 460; Story on Agency, sec. 93; 48 S. C., 120.

November 19, 1903.    The opinion of the Court was delivered by

MR. JUSTICE GARY. This is the second appeal in this case. The first is reported in 64 S. C., 1, 41 S. E. R., 776. The action was brought for the purpose of having ten shares of the capital stock of the American Bank declared to be the property of the plaintiff, and to require the defendant, Na-

tional Bank of Greenville, holding possession of said shares, to deliver them to them. The plaintiff was the original owner of the shares. He indorsed the certificates in blank and deposited them with L. Hogg as collateral security for a note of $1,000 executed by him in favor of Hogg. Thereafter the plaintiff authorized the defendant, Robert C. Foster, to borrow from his wife, the defendant, Mary B. Foster, the money to extinguish the Hogg note. Robert C. Foster accordingly took up the Hogg note and, also, the certificates of stock. Thereafter Robert C. Foster borrowed from the National Bank of Greenville a sum of money, and deposited with the bank, as collateral security, the said certificates. The Bank of Greenville thereafter presented the certificates to the American Bank, and had new certificates issued in the name of R. C. Foster.

The National Bank of Greenville denied certain allegations of the complaint, and set up two defenses:

1. That it was a creditor for valuable consideration without notice; and

2. That the plaintiff by his own conduct put it in the power of R. C. Foster to dispose of said stock, and should be estopped from asserting any title thereto as against this defendant.

The facts are more fully set out in the report of the special referee, which will be reported. His Honor, the Circuit Judge, confirmed the said report in a formal order.

While the exceptions are numerous, they raise practically but two questions, to wit: 1st. Was there error on the part of his Honor, the Circuit Judge, in not holding that the defendant, National Bank of Greenville, took the bank stock in question subject to whatever equities the plaintiff had against R. C. Foster, its assignor? and 2d. Was there error in sustaining the defense that the defendant bank was a purchaser of the stock for valuable consideration without notice?

We proceed to the consideration of the first question. It is true, section 133 of the Code provides that "in the case

of the assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defenses, existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange transferred in good faith, and upon good consideration before due," and that certificates of stock have been held in this State to be non-negotiable.    Nevertheless, the principle is now too well settled in this State even to admit of controversy, that the holder of certificates of stock will be protected, when he can show that he is a purchaser thereof, for valuable consideration, without notice of equities existing between the original parties.

The rule of law is thus aptly stated by Mr. Chief Justice Pope, in the case of *R. R. & Lumber Co.* v. *Bank*, 48 S. C., 130, 26 S. E. R., 238.    "Shares of the capital stock of a corporation are non-negotiable securities, and the usual incident to such non-negotiable securities is, that all subsequent holders are required to take them, with all the equities subsisting in favor of the maker against the first holder; but commerce and the widely diversified channels of the business of corporations in this country, as well as in many others, have caused Courts to recognize some salutary rule by which this sternness of the law has been greatly mitigated. This doctrine of equity and good conscience of an innocent holder for value without notice is a good illustration.    The cases in our own State of *State Bank* v. *Cox & Co.*, 11 Rich. Eq., 344; *Fraser* v. *City Council*, 11 S. C., 486, are directly in point here."    There is an elaborate and well considered article on this subject in the Central Law Journal, 243, of 26th September, 1902.

There is another reason why the assignee is placed on a different footing from the assignor.    The assignee in all cases embraced within the provisions of section 133 of the Code, may show acts of negligence, not known by him though known by his assignor, which estop the rightful owner from the assertion of his title. *West-*

25—67

*bury* v. *Simmons,* 57 S. C., 481, 35 S. E. R., 764; *Maybin* v. *Kirby,* 4 Rich. Eq., 105; *Montgomery* v. *Scott,* 9 S. C., 20. The exceptions raising the first question hereinbefore mentioned are overruled.

We will next consider the second question, whether there was error in sustaining the defense of purchaser for value, without notice. The respondents upon request were granted leave to review the case of *R. R. & Lumber Co.* v. *Bank,* 48 S. C., 120, but their arguments have failed to convince this Court that the principles therein determined should be overruled; that case is, therefore, affirmed.

Section 1894 of Code 1902, provides that "no transfers of stock shall be valid, except as between the parties thereto, until the same shall have been regularly entered upon the books of the corporation." The legal title to the certificates of stock may, therefore, be transferred *as between the parties* without the entry of the transfer being recorded upon the books of the corporation. But the question whether the legal title was, in fact, transferred, depends upon the intention of the parties. In this case we are satisfied that Maxwell did not intend to transfer the shares of stock to R. C. Foster. He is, however, estopped from asserting his rights, if the testimony shows that the defendant bank became the holder of the shares of stock, for valuable consideration without notice. The testimony shows that the defendant bank, unquestionably, occupies the position of a purchaser of the certificates and that it parted with value for them. The testimony does not disclose the fact that the bank had actual notice of the plaintiff's rights, but it is contended that it had notice of such facts as were sufficient to put it upon inquiry, which if pursued with due diligence would have led to knowledge of those rights. The main testimony relied upon to establish this fact is as follows: While W. E. Beattie, cashier of the defendant bank, was on the stand, counsel for the defendants asked him this question: "Q. Did you know of anything, Mr. Beattie, that

would impeach the title of Mr. Foster to that property or his right to transfer that stock?" To this question Mr. Beattie answered: "No, none at all. I think I recollect at the time, I am not absolutely positive as to this, but that is my recollection, I think I advised him as to the advisability of having that stock transferred into his own name on the books of the American Bank at the time, and he told me—but as to this I am not positive—that Dr. Maxwell asked him to hold it in that shape and give him a reasonable time in which to redeem it." On cross-examination, counsel for plaintiff asked said W. E. Beattie this question: "You say, Mr. Beattie, according to your recollection, at the time Mr. Foster offered you this certificate of bank stock indorsed by Dr. Maxwell, that you discussed with him the advisability of having the stock transferred upon the books of the American Bank?" To this question Mr. Beattie answered: "That is my recollection." Counsel for plaintiff next asked him: "And that Mr. Foster told you that Dr. Maxwell had requested it to stand that way so as to give to him an opportunity of redeeming it?" To which he answered: "That is my recollection." Said W. E. Beattie, after the argument closed, was recalled by counsel for defendant bank, and testified as follows in regard to what Foster said about Maxwell redeeming the stock: "As I said in my testimony before, I am not absolutely clear in regard to my request at that time to have him get the American Bank take up this certificate and issue a new one in his name, but my recollection is that I did make this request of him, and that his reply was, that Dr. Maxwell had requested him to keep the certificate in that shape and give him an opportunity to redeem it. I am not attempting to state Foster's words, but the impression that he left on my mind." Let us see what facts this testimony disclosed. It showed:

1st. That the transfer of the shares from Maxwell to R. C. Foster had not been entered upon the books of the American Bank, in compliance with Maxwell's request that they be not so recorded.

2d. That the reason why Maxwell did not wish the transfer recorded upon the books of the corporation was because he wanted an opportunity to redeem them.

The fact that he wanted an opportunity to *redeem* the shares, tended to show that the title of R. C. Foster to the certificates of stock was not absolute and unconditional. In our opinion, these facts were sufficient to put the defendant bank on inquiry.

The special referee found that the foregoing facts were not sufficient to put the bank on inquiry when considered in connection with other testimony in the case. In his report he says: "Mr. Beattie further testifies that he did not have any notice whatever of any rights that the plaintiff had in the stock. He testified that Foster gave him to understand that he was the owner and the title was in him. Mr. Beattie further testifies as follows: 'My understanding was that Mr. Foster was the absolute owner of the stock at that time; the transfer of Mr. Maxwell on the stock in blank confirmed me in that belief.' Mr. Beattie further testifies that his recollection is, that Foster told him Maxwell had transferred it to him for a certain amount he owed him. Since it has developed that Foster was not the owner of the stock, the reasons which he gave for not transferring it to his own name on the books of the American Bank may seem significant of bad faith on the part of Foster, and it may seem that the bank should have so construed them. After the event we can see many things which it seems plain indicated its approach, but which no prudence or diligence would have suspected before the event, was leading to it or indicated its approach. The defendant bank had many transactions with Foster, and had no reason to suspect his honesty. Regarding him as an honest man, what he said about Maxwell's request to be allowed to redeem was not sufficient to put the bank on inquiry, when what he thus said was coupled with the statement that he was absolute owner, especially when these statements were accompanied by the production of the certificate

of stock with Dr. Maxwell's unqualified indorsement thereon, which is the usual evidence of absolute ownership."

We cannot accept this view of the testimony. After being apprised of the facts hereinbefore mentioned, R. C. Foster was not the party from whom the bank should have sought information as to *Maxwell's* rights. It should have made inquiry of the plaintiff whose rights were to be affected by the transfer; and, if this had been done, it is but reasonable to suppose that the plaintiff would have given the desired information; in any event, if he had failed to do so, he would thereafter have been estopped from asserting his title to the stock. Facts sufficient to put a party on inquiry which if pursued with due diligence would have led to knowledge of other facts, are equivalent to notice of the facts that would have been disclosed by the inquiry. The testimony fails to sustain the finding of the Circuit Judge that the bank was without notice of the plaintiff's rights.

As this is a case involving the defense of purchaser for valuable consideration without notice, we take this opportunity of stating that such defense is always equitable in its nature, and that when the Court, in *Aultman* v. *Utsey*, 41 S. C., 304, 9 S. E. R., 617, decided that such defense was legal when interposed to an action on the law side of the Court, it was in error.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded for such further proceeding as may be necessary to give the plaintiff the relief to which he is entitled.

Mr. Justice Jones *dissenting*. I think that the judgment of the Circuit Court should be affirmed, for the reasons stated in the report of the special referee. The referee finds that the bank is the purchaser of the stock in question in good faith, and without notice of any rights of the plaintiff to the same and without notice of any fact sufficient to put the bank on inquiry as to the claims of plaintiff. In this finding the Circuit Court concurs. In order to overthrow this conclu-

sion it is incumbent upon appellant to satisfy the Court that the preponderance of the evidence is against that conclusion. The testimony upon which it is sought to reverse the Circuit Court is that of Mr. Beattie, an officer of the bank, who without being positive said that when Foster transferred the stock to the bank as collateral for a loan, Foster informed him that the reason why the stock had not been transferred to Foster on the books of the company was that Maxwell, plaintiff, had asked him to hold it in that shape and give him a reasonable time in which to "redeem" it. Then an argument is built upon the use of the word "redeem," as showing that the bank was thus put upon inquiry, as that term indicated that the title of the stock was not absolute and unconditional in Foster. But "redeem," while it may mean *recover from pledge* primarily, means to *purchase back,* and when the investigation is to ascertain what notice or knowledge Mr. Beattie had as representing the bank, and it is sought to infer knowledge from his use of a word, it is but fair that Mr. Beattie's explanation be noticed, as shown by the following taken from the "Case:" "Q. What do you mean by the word 'redeem?' A. My understanding was that Foster was the absolute owner of the stock at that time; the transfer of Dr. Maxwell on the stock in blank confirmed me in that belief. And in regard to what I said about what Mr. Foster said about Dr. Maxwell redeeming the stock, I meant redeeming from Mr. Foster, not that he had any right to redeem from us, but to get it back from Mr. Foster in its original shape, my understanding was that Dr. Maxwell would have to give Mr. Foster full value for the stock. Q. Did you understand that Dr. Maxwell had any claim on that stock, from what Foster told you? A. I did not understand that Dr. Maxwell had any claim whatever on it. My understanding was from conversation which I had with Mr. Foster, as I recollect it, that Dr. Maxwell had asked of Foster that he would hold that original certificate just as it was and give him (Dr. Maxwell) an opportunity of paying to Foster the value of the stock and getting it back in its original

shape. I don't remember that Foster used the word 'redeem.' "

It seems to me that the only proper inference to be drawn from Mr. Beattie's testimony is that he believed that Foster was absolute owner of the stock, and had reason to so believe from the blank indorsement thereon by Maxwell and the representation of Foster, the holder; and if Maxwell had any rights with respect to said stock, it was merely to buy it back for full value. Conceding that the bank is chargeable with notice of such a claim in favor of Maxwell, the equity of Maxwell is abundantly protected by the judgment of the Circuit Court.

The present case is not materially different from the case of *Bank* v. *Cox,* 11 Rich. Eq., 344, recognized in *Fraser* v. *Charleston,* 11 S. C., 519.