HIGGINS, Justice.
 

 This is a suit by two daughters, as heirs of their deceased mother and sister, against their father, to be recognized as co-owners with him of certain community property, for a monied judgment covering their share of the property sold by him, and for an accounting of their pro rata of the rents he received, he having lost the usufructuary rights as surviving spouse by entering a second marriage.
 

 The petitioners allege that their father and mother were married in 1909, and that there were three children born of the union, the petitioners and their deceased sister; that their mother died on October 31, 1918, leaving community property consisting of a grocery store, fixtures, furnishings and a stock of merchandise valued in excess of $4,000, Lot IS of Block “F”, Texarkana Annex Subdivision, Shreveport, together with the buildings and improvements thereon, Lots 5 and 6 of Block 1, Bossier City, and an undivided one-half interest in Lots 9, 10, 11, 12, 13 and 14 of .Block 3 of Hunter Subdivision, Bossier City; that at the time of their mother’s death, her undivided one-half interest in
 
 *43
 
 the community property was inherited by her three daughters, subject to the usufruct in favor of their surviving parent; that Catherine Papa, their sister, died on November 19, 1918, without issue, and her interest in the succession of her mother was inherited in the proportions of one-fourth to the father and three-fourths to petitioners jointly; that their father married again on July 4, 1920, thereby terminating the usufruct on the property in his favor; that on February 21, 1919, their father sold the undivided one-half interest he and their mother owned in Lots 9, 10, 11, 12, 13 and 14 of Block 3 of Hunter Subdivision, Bossier City, for $15 (including their interest) and converted the proceeds of the sale to his own use; that on March 14, 1920, their father sold the store, fixtures, furniture and stock (including their interest therein) to C. O. Bracato for $4,000 cash, and appropriated the money to his own use; that on May 19, 1920, their father sold Lots 5 and 6 of Block 1, Bossier City (including their interest therein), for $200 and kept the proceeds of the sale for himself; and that from the date of their mother’s death their father has enjoyed exclusive control of all of the community property, and, particularly since his remarriage, has continuously rented the unsold community property and has had the use of all funds for his own personal purposes and has failed to account therefor. They prayed that they be recognized as joint-owners of an eleven twenty-fourths (ll/24th) interest and their father, as co-owner, of a thirteen twenty-fourths (13/24ths) interest in the unsold community property, free of the usufruct in favor of the surviving spouse; that they .have a monied judgment for $1,833.33, or ll/24ths of $4,000, the amount received by their father from the sale of the store, fixtures, furniture and stock; that they have a monied judgment for $98.54, or eleven twenty-fourths of $215, representing the selling prices of the lots sold by their father; and that their father render a complete account of all rents received by him from the community property left by their mother, from the-date of his second marriage, July 4, 1920.
 

 The defendant, in his answer, admits-practically all of the allegations of the plaintiffs’ petition, but makes the following defenses:
 

 That from the date of his first wife’s death on October 31, 1918, to March 14, 1920, when he sold the store, fixtures, furniture and stock, he had built up the grocery business from a value of $2,000 to $4,-000 and the shares of his daughters therein should be predicated on the former and not the latter sum; that the community debts aggregated $4,100 which sum he borrowed from Sam Fulco to pay them and that this total amount was subsequently repaid out of his own funds, and he is entitled to credit therefor by compensation and setoff; that after his second marriage and during August 1924, he erected on the rear of Lot 15 of Block "F”, Texarkana Annex Subdivision, Shreveport, a residence fronting on Wichita Street at a cost of $3,125, out of his own funds, and, therefore, this improvement belongs to him and his second wife; that, in order to com-, píete the residence on Line Street, he borrowed from John Santora, his brother-in-
 
 *45
 
 law, the sum of $1,000, which he paid out of his own funds, subsequent to his first wife’s death, and for which he was entitled to credit by compensation 'and setoff; that the taxes, insurance, repairs and paving assessments from 1918 through 1929 on the community property rented amounted, respectively, to $2,961.55, $324:00, $3,-780 and $1,182.10, all of which amounts he paid out of his personal funds and that he is tentitled to credit therefor by compensation and setoff; and that beginning July 4, 1920, he received $35 per month rent for the residence on Line Street and supported one of the plaintiffs, Mrs. Maggio, until her marriage, and his other daughter, Jennie Papa, through 1938, and applied the rents and revenues from the property for their maintenance, support and education, as he had a right to do under the law, and therefore, no accounting in that respect is due them.
 

 He also pleaded compensation and set-off of the expenses of the last illness and funeral costs of both his first wife and daughter amounting to $746.25 and $226.25, respectively, as well as certain specific bills owed by the community at the date of his first wife’s death, all of which he paid out of his own funds.
 

 He pleaded prescription of 3, 5, 10 and 20 years against the plaintiffs’ claims and they, in turn, entered identical pleas of prescription against his claims.
 

 At the beginning of the trial, it was conceded that the improvements or residence facing on Wichita Street on Lot 15 of Block “F”, Texarkana Annex Subdivision, Shreveport, belonged to the defendant and the plaintiffs only had a claim for their pro rata of the rent for the use of that part of the lot occupied by the building.
 

 It was also conceded that the plaintiffs owned an eleven twenty-fourths interest in Lot 15 of Block “F”, Texarkana Subdivision, and the residence thereon facing on Line Street, free of the usufruct in favor of the defendant, who owned the other thirteen twenty-fourths thereof.
 

 After a trial on the merits, the judge entered judgment in favor of the plaintiffs and the defendant, as above stipulated. He rendered judgment in favor of the plaintiffs and against the defendant for the sum of $1,220.52, with 5% interest thereon from date' of judgment until paid, representing plaintiffs’ (eleven twenty-fourths) pro rata of the selling prices of the community property less the amount of the community debts and decedents’ expenses of last illness and funeral bills, which the defendant paid out of his own funds. He refused to allow the plaintiffs a monied judgment for their pro rata of the rents from the residence facing on Line Street less expenses, because after deducting the taxes, insurance, repairs and paving assessments thereon paid by the defendant and allowing him $10 per month for the support, maintenance and education of his two daughters, their pro rata share of $636.62 had been completely expended for the period of time he maintained, supported and 'educated them.
 

 The plaintiffs and the defendant asked for rehearings, which were refused, and both litigants have appealed. In this Court there was neither oral argument made nor brief filed in behalf of the plaintiffs.
 

 
 *47
 
 It is indisputable that the defendant received $4,000 cash for the sale of the store, fixtures, furniture and stock on March 14, 1920, and $215 for the lots he sold in 1919 and 1920, or a total of $4,215. The defendant claimed that the store, consisting of the merchandise, fixtures, furniture, etc., was only worth $2,000 on the date of his first wife’s death, and that the added $2,000 in value was due to his own efforts, subsequent to her demise. His testimony in that respect was contradicted by his two brothers-in-law. It is our opinion that the defendant’s attempt to show that the grocery business increased in value 100% from October 31, 1918 to March 14, 1920, or in one year, 4 months and 13 days, is not impressive. There were no factual changes which would justify the court in accepting defendant’s statement. Clearly, we cannot say that our learned brother below was manifestly in error in rejecting the defendant’s testimony in this respect.
 

 The evidence shows, as correctly found by the trial judge, that the defendant, after the dissolution of the community of acquets and gains, paid certain community debts and the decedents’ expenses of last illness and funeral bills, as follows:
 

 Tony Lucero ........ $400.00
 

 W. F. Taylor & Co. .. 300.00
 

 Foster & Glassell Co... 117.00
 

 Dr. New (Expenses of last illness of Mrs. Papa) ............. 20.00
 

 Hospital expense (Mrs. Papa) ............. 620.00
 

 Total community debts......... $1,457.00
 

 Hospital expense — ■ Catherine Papa (deceased daughter) ... 180.00
 

 Funeral expense, Catherine .............. 46.25
 

 Funeral expense, Mrs. Papa.............. 126.25
 

 Total ......................... 352.50
 

 Grand Total .......... $1,809.50
 

 The defendant is entitled, by compensation and setoff, to the above sum of $1,-809.50.
 

 The defendant’s attempt to prove that he borrowed $4,100 from a friend, Sam Fulco, with which to pay the community debts, was unsuccessful. The party from whom he is said to have borrowed the money was shown not to have any account, neither checking nor savings, at the bank where the money was supposed to have been procured at the time the loan was alleged to have been made. We find no error in the trial judge’s action in rejecting the defendant’s evidence on this score.
 

 The defendant stated that he borrowed $1,000 from his brother-in-law, John Santora, before his wife died and paid this sum out of his own funds after her death. Santora flatly contradicts him, denying that he ever loaned any sum of money to the defendant. We cannot say that the trial judge was in error in rejecting this item.
 

 The trial judge also allowed plaintiffs jointly for their pro rata share $32 per year land rent for Lot 15, Block “F” for the occupancy of the residence facing
 
 *49
 
 •on Wichita Street, or $128 for a period of four years. Apparently, the court concluded from the evidence that during this ■time the plaintiffs were not residing with the defendant, the older sister having been married and the younger one having gone to live with her. This amount is reasonable and in accordance with the evidence that the residence facing on Wichita Street yielded between $22.50 and $25 per month rent, which was collected by the defendant.
 

 The plea of prescription of three years against the rental charge of $32 per year for the land would not be applicable to the three years immediately preceding the institution of the present suit, because it is only after a lapse of three years that that prescription could be effective. The plea is not well founded for the additional reason that the defendant father collected the money for the joint account of himself and his children as co-owners and the present action is one for an accounting and not for rent within the meaning and contemplation of the law and, therefore, not prescribed by three years. Succession of Bonnette, 188 La. 297, 176 So. 397.
 

 Calculating the rent received from the residence on Line Street at the rate of $35 per month for a period of 21 years •and 3 months, or from July 4, 1920, to October 4, 1941, the total amount is $8,925. Allowing the defendant credit, under his plea of compensation and setoff, for $1,-931.18 taxes, $356 insurance, $3,780 repairs and $1,468.84 paving assessments, or $7,-536.02, on the total of $8,925, leaves a net balance of $1,388.98. The plaintiffs’ eleven twenty-fourths proportionate interest amounts to $636.62. Under the law, the judge properly held that the father was entitled to apply this revenue to the support, maintenance and education of his daughters, and, at the rate of $10 per month, the above sum was exhausted. Mercier v. Canonge, 12 Rob. 385; Succession of Boyer, 36 La.Ann. 506; Succession of Applegate, 39 La.Ann. 400, 2 So. 42; Sims v. Billington, 50 La.Ann. 968, 976, 24 So. 637; Gaspard v. Coco, 116 La. 1096, 41 So. 326; and Succession of Fontano, 196 La. 775, 200 So. 142, 147.
 

 The foregoing authorities are appropriate here because it was Conclusively proven that the defendant had four children by his second wife, all of whom were dependent upon him for support, and that he is in modest circumstances and did not intend to bear the burden of maintaining, supporting and educating the plaintiffs independently of their own revenues.
 

 The plaintiffs’ attempt to show that they rendered sufficient valuable services in their father’s store to pay for their maintenance, support and education was overcome by the testimony of disinterested witnesses that they were treated well and like other children, attended picture shows, dances and parties and were given automobile rides, etc. Consequently, the trial judge properly rejected their claim.
 

 The trial judge erroneously deducted the funeral bill of the deceased mother and the expenses of last illness and funeral costs of the deceased daughter, Catherine Papa, from the total amount of $4,215, representing the combined selling prices of a part of the community proper
 
 *51
 
 ty. It is well-settled that the surviving spouse’s interest in the community property cannot be sold to pay the funeral expenses incurred after the dissolution of the community of acquets and gains resulting from the death of the departed spouse and that this expense should be deducted from the deceased’s half interest in the community. Womack v. McCook Bros. Funeral Home, 194 La. 296, 193 So. 652. The evidence conclusively shows that Catherine Papa died after her mother, whose death ended the community of acquets and gains between her and her husband, and, therefore, the expenses of Catherine’s last illness and funeral costs should be deducted from her portion of the inheritance.
 

 The proper calculation of the amount due the plaintiffs herein is as follows:
 

 Total gross selling prices of community property ...... $4,215.00
 

 Total community debts paid by the defendant........ 1,457.00
 

 Net community property proceeds .... 2,758.00 Net 1/2
 
 community
 

 interest of Mrs.
 

 Papa ............ 1,379.00
 

 Mrs. Papa’s funeral bill .............. 126.25
 

 Net amount due Mrs.
 

 Papa’s estate..... 1,252.75
 

 Plaintiffs entitled jointly to 2/3rds.............$ 835.16
 

 Catherine Papa’s (deceased daughter) 1/3.............. 417.58
 

 Catherine’s expense of last illness and funeral bill ...... 226.25
 

 Net Estate of Catherine Papa....... 191.33
 

 Plaintiffs entitled jointly to 3/4ths.............$ 143 49
 

 Gross rental of Lot 15, Block “F” for 4 years at $32 per year, plaintiffs entitled to .................... 128.00
 

 Grand total of amounts due to the plaintiffs.................... $1,106.65
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court is amended by reducing the amount awarded to the plaintiffs jointly against the defendant from the sum of $1,220.52 to the sum of one • thousand, one hundred six and 65/100 ($1,106.65) dollars, and, as thus amended, the judgment is affirmed; the plaintiffs to pay the costs of this Court and the defendant to pay the costs of the lower court.