164 P.2d 204

**LANGHURST v. LANGHURST et al.**

No. 4894.

Supreme Court of New Mexico.

Nov. 30, 1945.

Mechem & Hannett and Joseph L. Smith, all of Albuquerque, and Albert O. Lebeck, of Gallup, for appellant.

Denny & Glascock, of Gallup, for appellees.

BICKLEY, Justice.

Plaintiff, Florida Langhurst, and the deceased Henry Langhurst, were married on

May 28, 1931. At that time Henry Langhurst, now deceased, was the owner of some ranch lands which are the principal subject of this lawsuit. These lands, worth about $5000, were sold by the County of McKinley to the state for delinquent taxes in 1936 and conveyed to the state, and repurchased from the state by the deceased Langhurst in January 1943 for $30.43. The paramount question in this review is: Was the trial court in error in holding that this land was the separate property of Henry Langhurst? Largely, the answer is to be found in our statutes concerning real property sales for delinquent taxes. Our citations will be to the 1941 Compilation, because, so far as pertinent to a disposal of this case, they are not essentially different from the 1934 Statutes, as amended in 1937, and are unaffected by the 1943 amendments.

Sec. 76-740 provides:

"The person whose title to property has been extinguished by the issuance of a tax deed to the state shall have the first and prior right to repurchase such property, provided that application for such repurchase is received by the state tax commission before any other application to purchase such property is received and accepted by said commission."

It is further provided in the same section: ·

"Any person entitled to repurchase under the provisions of this section shall not be required to pay more than the amount of the delinquent taxes, penalties, interest and costs accrued against the property sought to be so repurchased, except that there shall, in any case in which such repurchase is made by contract, be charges for interest on deferred payments and for current taxes."

It is to be noted that the next following section (76-741) deals with *purchase* as distinguished from *repurchase*. Purchase, under 76-741, is not confined to one whose title to the property has been extinguished, nor is the price which the state may charge limited as it is in Sec. 76-740.

We think the exercise by the "person whose title to property has been extinguished by the issuance of a tax deed to the state," of the exclusive privilege accorded to him is nothing more nor less than redemption of the property and the title thereto which has been so extinguished.

The transaction is not essentially different from redemption before a tax deed is issued.

Section 76-708 provides that: "the tax sale certificate shall vest in the purchaser * * * the right to a complete title to the property described therein," subject to the right of redemption as provided by law. In neither case (under 76-708 or 76-740) is the sale of the taxed property nor the subsequent proceedings a final and irrevocable divestiture of the title of the owner, or former owner, so long as the privilege of recapture extended to such owner, or former owner, may be lawfully exercised.

As between redemption before deed is issued to the state and repurchase after-

wards the result, so far as the person whose title has been extinguished is concerned, is the same. The mechanics only, are different. An examination of the definitions of the words "redeem" and "repurchase" found in Words and Phrases, Permanent Edition, Vols. 36 and 37, respectively, shows uniform holdings of the courts to the effect that the words are synonyms. The following are only a few illustrative definitions:

"The word 'redeem' means to purchase back. Maxwell v. Foster, 67 S.C. 377, 45 S.E. 927, 932.

"The word 'redeem,' as used in statutory provisions authorizing a party to redeem, means 'repurchase.' Robinson v. Cropsey, 2 Edw.Ch., N.Y., 138, 146.

"The word 'redeem,' as used in statutory provisions authorizing a party to redeem means 'repurchase.' Mannington v. Hocking Val. R. Co., C.C., 183 F. 133, 145."

" 'Redemption' in a literal sense, means buying back or repurchasing. Lincoln County v. Shuman, 138 Neb. 84, 292 N.W. 30, 34; Marker v. Scotts Bluff County, 137 Neb. 360, 289 N.W. 534, 537."

And in Pace v. Bartles, 47 N.J.Eq. 170, 20 A. 352, 359, it was decided: "The word 'redeem' means 'repurchase.' The words are synonyms."

In 51 Am.Jur., Taxation, Sec. 1104, discussing operation and effect of redemption, is is said:

"The effect of payment or tender of the amount necessary to redeem, by the owner or other persons entitled to redeem land from a tax sale, when made within the time limited by the statute and in accordance with the conditions and limitations imposed by the statute upon the exercise of the right to redeem, is to defeat the estate of the purchaser at the tax sale and to leave the title and right to possession of the land where it would have been had no sale of (for) taxes ever been made."

Among the cases cited in support of the foregoing text is Kershner v. Sganzini, 45 N.M. 195, 133 P.2d 576, 134 A.L.R. 1290.

Sec. 76-747 is also worthy of consideration. It is as follows:

"It is hereby declared that it is the intention of this act (76-724, 76-738–76-747) to provide a method whereby persons who have lost title to property through sale of the same to the state for delinquent taxes may recover such property *and the title thereto* without undue hardship and whereby the state and its subdivisions may receive their proper revenue; and to the accomplishment of these intentions this act (76-724, 76-738–76-747) is to be liberally construed. (Laws 1939, ch. 203, § 11, p. 494)." (Emphasis supplied).

Counsel for appellees plausibly suggest that since it is only the person whose title to property has been extinguished by the issuance of a tax deed to the state who has the right to repurchase or redeem such property, it is to be doubted whether the community composed of Henry Langhurst and Florida Langhurst, his wife, could successfully assert a right to repurchase. In

other words, they suggest that the right of a husband to repurchase real property owned by him before his marriage, the title to which has been extinguished by the issuance of a tax deed to the state, is not a community asset, but is an asset belonging to his personal estate. Suppose the husband had owned separate real property prior to his marriage, ar.d afterwards the title thereto had been extinguished by the issuance of a tax deed to the state, and in the meantime the husband had met with the misfortune of becoming insane. Who would have the power or authority to assert the right to repurchase? Would it be the wife who had been designated as head of the community, or the guardian of the estate of the afflicted husband? These speculations confirm us in our conclusion that from all of the foregoing, there is no merit in appellant's Assignment of Error No. 6 that:

"The lower court erred in concluding as a matter of law that the repurchase by Henry Langhurs'. of said section 12 from the State of New Mexico was pursuant to the right given by statute to said Henry Langhurst individually, and therefore, when so repurchased, said property remained the property of said Henry Langhurst."

We are not deterred from arriving at this conclusion by the argument of appellant that Henry Langhurst, upon repurchase, acquired a new and independent title presumably with community funds, there being no evidence to show that the repurchase was made with his separate funds. If it is a fact that community funds were used to make the repurchase, the representative of the community doubtless has a right to assert a claim for reimbursement from the estate of the deceased. What we have heretofore decided makes it unnecessary to consider some of the other questions presented by appellant. One, however, remains. It appears that prior to the filing of plaintiff's complaint for a declaratory judgment concerning the status of the real property as community property, or as separate property of the deceased Langhurst, a petition for probate of the will of Henry Langhurst, deceased, had been filed in the Probate Court of McKinley County, which probate proceeding had been removed to the District Court, and at the trial this probate proceeding was consolidated with the suit for a declaratory judgment. A limited research impels us to express a doubt as to the propriety of this consolidation. But since it was acquiesced in below, and no objections to it have subsequently been made, we have concluded to register none. It appears that under the terms of the will of the deceased Langhurst, two-thirds of the real property goes to Christopher Langhurst and one-third to Robert Langhurst, brother and son, respectively, of the deceased.

Independently of the question of the status of the real property as being separate or community, questions have arisen as to the proper execution by the executor in the regular routine administration. Appellant's Assignment of Error No. 10 is:

"The court erred in charging funeral expenses against the community estate of Henry Langhurst and plaintiff."

What the trial court concluded was that the funeral expenses and costs of administration should be prorated between the separate and community estates. So that in reality plaintiff's contention is that the court erred in charging any part of the funeral expenses to the community estate. We have not been cited to any authority giving the trial court the power to prorate funeral expenses and so the ultimate question is: Are funeral expenses of a deceased husband chargeable against the community property owned by himself and wife during their lifetime? The question seems to be one of first impression in this jurisdiction. The authorities are not in entire harmony. In 42 C.J.S., Husband and Wife, § 587, at page 150, it is said:

"Under some authorities, such expenses are chargeable not to the community, but to decedent's estate or to his or her share of the community property. Under other authorities, the community estate is primarily liable for decedent's funeral expenses."

The citations supporting the first portion of the above quotation are from Louisiana, one from Washington and one from our neighboring state of Arizona, Nowland v. Vinyard, 43 Ariz. 27, 29 P.2d 139, 141, where the court, without much argument or citation of authority, decided:

"The expense of the tombstone is one that was voluntarily incurred by the executors and, in view of the condition of decedent's estate, very properly so; but certainly they had no power or authority to make it an obligation payable out of the one-half interest in the community of the surviving wife. In other words, it was not a community debt."

The citations supporting the second rule mentioned in the C.J.S. text are from Texas. We will comment concerning the Texas cases later.

The latest expression we have found from the Louisiana courts is in Maggio v. Papa, 206 La. 38, 18 So.2d 645, 646, where it was decided by the Supreme Court:

"A surviving spouse's interest in community property cannot be sold to pay deceased spouse's funeral expenses, incurred after dissolution of community by such spouse's death, but such expenses should be deducted from deceased's half interest in community."

Mr. McKay, in his work on Community Property, discussing this question at Secs. 800 and 801, after stating the Louisiana doctrine, says:

"In the common-law community property states the authorities have not followed the lead of the Louisiana precedents mentioned in the preceding section, though they have not repudiated them. They have simply passed them by."

However, in the same section Mr. McKay cites a Massachusetts case to the effect that in the event of a payment of the expenses of the wife's funeral by the husband he is entitled to recover the amount so paid from her separate estate.

He also cites an Iowa case in which the court reached the same conclusion, and he says that:

"In New York, the necessary and proper funeral expenses are allowed as a charge upon the estate of the decedent, for whose estate they were incurred; but, in the event the decedent be a married woman, and the expenses be paid by the husband, he is entitled to reimbursement from her personal estate."

Mr. McKay concludes his discussion with the following comment:

"If the wife is the first to die, while the husband is bound to provide for his wife's burial, a rule which enables him to recover from her share of the community property or her separate property is not unfair to the wife's heirs, and such a rule would have the support of the Louisiana cases mentioned in the preceding section. If the husband dies first there seems to be a stronger reason for applying the same rule."

De Funiak, in his work on "Principles of Community Property", has this to say:

"The question has evidently at times puzzled our American courts as to whether funeral expenses of the deceased spouse are debts of the community property or of the separate estate of the deceased spouse. While funeral expenses are among those involved in administering and settling up the affairs of the decedent, they have no connection with the administration and settling up of the affairs of the conjugal partnership which is separate and distinct from the administration of the individual affairs of the decedent. Moreover, the funeral expenses relate to a time after the conjugal partnership has been dissolved. In the Spanish law, the funeral expenses were chargeable only against the separate estate of the decedent and, indeed, only against that fifth part of his estate which he was free to dispose of by will in any manner he saw fit. Even though the decedent had directed it, such expenses were not deductible from any other part of his estate. The same view has been taken in Louisiana that the funeral expenses are chargeable against the separate estate of the decedent, but in Texas the opinion has been expressed that the separate estate of the deceased spouse and the community estate 'are alike primarily liable for such expenses,' with consideration given to the question upon the credit of which estate the expenses were incurred. In California, the expense of the wife's burial has been imposed upon the husband, but apparently subject to the exception that if he is poor and the wife has a considerable estate, some part of the expenses may be defrayed from her estate. So far as our community property jurisdictions are concerned, the matter must, of course, be largely dependent upon the language of the local statutes and these should be resorted to. Their examination here is not within the scope of this treatise. Without the strongest justification, from their interpretation, the community property should not be subjected to charges for funeral expenses. At most, only the decedent's share of the com-

munity property, after partition, should be so charged; or, naturally, if it is charged against the decedent's share before partition, his share should be debited with such amount."

Appellant points to 1941 Comp., Sec. 33-810, which she says provides that the charges of the last sickness and funeral of the deceased are claims against the estate of the decedent, entitled to first rank of payment after the expenses of administration. We do not lean upon this statute very much for our support, but it has some potency, because some of the law writers, discussing the law of decedents' estates, view the cost of burial as an expense of the administration, whereas others treat such expenses as debts which are postponed to the expenses of administration. Since the section of our statute last above referred to is in the portion of the law relative to administration of decedents' estates, which refers to "claims—allowances and payment," we think this section indicates legislative understanding that funeral expenses of the deceased are a debt or claim against the decedent's estate, as distinguished from expenses of administration.

Coming back to the Texas cases, as promised, we are not persuaded, from our appraisal of them, that the expressions of preference for the so-called Louisiana rule by McKay and de Funiak are not well founded. Another thing is that the Circuit Court of Appeals, Fifth Circuit, in Blair v. Stewart, 49 F.2d 257, 259, after reviewing the Texas cases, reached the following conclusion:

"We are of opinion that the Board was correct in holding that Esperson's funeral expenses were deductible from his half of the community property. Funeral expenses are deductible from an estate when they are 'allowed by the laws of the jurisdiction.' 26 U.S.C.A. § 1095a(1). Such expenses are by the law of Texas recognized as claims against an estate and are given preference over all other claims. Article 3531, Revised Civil Statutes. The executor of an estate has no authority to administer any estate except that of the decedent, and therefore cannot administer on the behalf of the community property that belongs to the surviving spouse. An estate liable for funeral expenses at all is, of course, liable for the whole of such expenses. Gilroy v. Richards, 26 Tex.Civ. App. 355, 63 S.W. 664, and Goldberg v. Zellner, Tex.Com.App., 235 S.W. 870, hold that community property rather than separate property is primarily bound for funeral expenses. In the first cited case it is not clear whether the court meant to hold that funeral expenses were chargeable against the entire community estate or only against the decedent's interest therein. But we think any doubt on that question was set at rest by the decision of the Supreme Court of Texas in Richardson v. McCloskey, 276 S.W. 680, where it was held that funeral expenses were chargeable against 'the estate.' The only estate there being administered was the interest of the

decedent in community property; for in that case, as in this, the decedent had no separate property."

The thought there emphasized, that it is decedent's estate only that is being administered, should be kept in mind.

It is proper to say that the Court of Civil Appeals of Texas, Eastland, in Norwood v. Farmers & Merchants National Bank, 145 S.W.2d 1100, did not agree with the foregoing appraisal by the Circuit Court of Appeals of the Texas decisions.

For what it is worth we cite, in favor of our conclusion, that the Legislature of 1937 assumed that the estate of a decedent is chargeable with funeral expenses. 1941 Comp. Sec. 34-103, being a part of the Succession Tax Law, provides that for the purpose of computing the succession tax there shall be deducted from the gross value of the estate, all exemptions allowed by law, "as well as the funeral expenses of the decedent." This seems to indicate the legislative view that the inheritance is burdened with the funeral expenses of the decedent and consequently the heirs or devisees should be relieved to that extent of the burden of a succession tax.

And speaking of fairness of result, as does Mr. McKay, since the question, so far as community contribution is concerned, will arise ordinarily but once, it would seem unfair that the wife's share of the community property should bear a portion of the expense of the husband's funeral and, ultimately, all of her own.

From all of the foregoing it is our conclusion that the trial court erred in charging any portion of the funeral expenses of the decedent, Henry Langhurst, against plaintiff's half interest in the community property. Whether a different rule applies to the expenses of administration, and whether the same rule applies where the wife dies first, are questions not before us, and concerning which we express no opinion.

We come now to a consideration of the cross appeal of appellees. This presents the contention that the District Court erred in holding that the money received by the Executor from the sale of the 1943 bean crop, the seed beans and the bean hay, was community property. The contention of cross appellants is that the ranch in 1943 was farmed on shares by a man who was to receive one-half of the bean crop, and that the other one-half was rent, and consequently belonged to the separate estate of Henry Langhurst, deceased.

Cross appellants explain their unpreparedness on the presentation of this question at the trial on account of the absence of this issue from the original suit for a declaratory judgment. When the consolidation of the declaratory judgment action with the probate proceeding occurred at the trial this issue about the beans was interjected, and cross appellants acknowledge that because of these circumstances, "unfortunately, the record is not entirely clear."

In view of the presumption of correctness which attends the decisions of the

trial court as to the facts, and the unsatisfactory state of the record which we have examined, we are unable to say that the trial court erred in refusing to hold that the proceeds of the bean crop represented solely rent of the ranch.

Accordingly, the judgment is affirmed, except in so far as it subjects the community property to payment of funeral expenses of decedent, which portion of said judgment is reversed and the cause is remanded with directions that the consolidation of the actions be vacated, and that the court proceed with the administration of the estate of Henry Langhurst in a manner not inconsistent with the views herein expressed.

It is so ordered.

MABRY, C. J., and SADLER, BRICE, and LUJAN, JJ., concur.