[No. 24638. Department Two. January 4, 1934.]

WILLIAM GENERO, *Appellant*, v. HENRY EWING, *Respondent*.[1]

*W. L. LaFollette, Jr.*, for appellant.

*O. H. Horton*, for respondent.

GERAGHTY, J.—This is an action by plaintiff, William Genero, against defendant, Henry Ewing, for damages resulting from the destruction by fire of an airplane and hangar, alleged to have been caused by the negligence of defendant. The case was tried to the court

[1]Reported in 28 P. (2d) 116.

without a jury, and judgment rendered in favor of defendant, from which plaintiff appeals.

July 13, 1932, respondent made a landing in an airplane on an airfield two miles out of Colfax. The field was a small one, privately owned, and had neither attendants nor the customary facilities of municipal and commercial fields. The respondent maintained his plane for private use and pleasure, and kept it on the field. The appellant had a hangar on the field, in which he had housed a plane for some time before the accident. The point of landing was about two hundred fifty yards south of appellant's hangar.

Respondent testified that, after his plane had come to a stop with the motor dead, in order to move it to its place at the side of the field, he proceeded to get the motor in motion again. After making the necessary mechanical adjustments in the control, he left the cockpit and went forward to start the motor by turning the propeller. The motor started "idling" a little slowly, acting as though it might not be getting sufficient gas. He stood by a couple of seconds, thinking he might have to crank again. He then started around the wing tip to get into the cockpit, but, before reaching it, through some unexplained cause, the throttle gave way, the engine sputtered, then suddenly moved rapidly, and, before he could board it, the plane got away, heading in a northeasterly direction, then described a partial circle and went north, striking appellant's hangar, when the plane burst into flames which destroyed the hangar and both planes.

A witness for respondent, who qualified as an expert, explained the mechanism of the engine controls, the precautions necessary to be taken in starting, and testified that the steps detailed by respondent as having been taken by him preparatory to moving his plane were those proper and usual, under the circumstances,

and such as a careful pilot would use. In his opinion, something broke in the engine, the throttle or gasoline feed, causing the plane suddenly to start and get away. In an ordinary municipal or commercial field, where attendants and proper facilities are available, blocks would be placed in front of the wheels before the engine was set in motion, or someone would sit at the controls while the engine was started. This field had none of these facilities, and was described by the witness as an emergency field where a pilot would of necessity have to proceed as respondent did here. There were two boys on the field at the time, there as onlookers, but respondent testified they were not mature enough or experienced enough to be permitted to assist him in the operation of starting.

In his complaint, appellant alleged that the proximate cause of the destruction of his plane and hangar was the negligence of respondent in cranking and starting the engine with no pilot in the cockpit in charge of the controls, and no blocks in front of the wheels to keep the plane from escaping. It is admitted that the wheels were not blocked, and that there was no one in the cockpit at the controls. The appellant offered no testimony, and was not in position to offer any, in respect to the failure of the control mechanism.

The trial court made the following findings of fact:

"(1) That plaintiff's airplane and hangar were destroyed in a fire caused by defendant's airplane escaping from his control and colliding with the airplane of plaintiff.

"(2) That there were no helpers or assistants connected with the landing field, near Colfax, Washington, where such destruction took place.

"(3) That defendant, after alighting from a flight with his engine stopped, cranked the engine of his airplane without blocks in front of the wheels and with no one at the controls of his airplane; that his engine

after a few preliminary 'sputters' suddenly started up rapidly and before defendant could board his plane it escaped and collided with the plane of plaintiff and in the ensuing fire plaintiff's plane of the value of $2,000 and his hangar of the value of $200 were destroyed.

"(4)   That with the throttle closed, as aforesaid, the propeller could not have gained sufficient speed to move the plane ahead, except upon the happening of some accident, or breakage in the controls.

"(5)   That defendant operated his plane in the usual and customary manner on this and similar fields, and used such care in cranking, starting and boarding his plane as a careful pilot would use under similar circumstances.

"(6)   That the destruction of plaintiff's airplane and hangar was the result of a mere casualty or accident, and was not caused by the carelessness, negligence or fault of defendant."

Appellant assigns as error:   (1)   The finding that respondent operated his plane in the usual and customary manner, and used such care in cranking, starting and boarding as a careful pilot would do under the circumstances;  (2)   the finding that the destruction of appellant's plane and hangar was the result of a casualty or accident, and was not caused by the negligence of respondent; and  (3)   the conclusion of law that appellant was not entitled to recover, and the judgment of dismissal.

Appellant, in the lower court, as he does here, relied largely upon the rule of *res ipsa loquitur*.   The trial judge, in a memorandum opinion, while expressing some doubt as to the application of the rule, said he was of the opinion that the respondent could not be held under it in any event, because, while his negligence might be inferred from the circumstances of the case standing alone, he was entitled to rebut the inference, and the testimony in his behalf showed that he

had used the usual and customary precautions of an operator under similar conditions and circumstances. In this view of the force of the rule, we think the trial court was correct.

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff." *Sweeney v. Erving,* 228 U. S. 233, 33 S. Ct. 416, Ann. Cas. 1914D, 905.

"The proper instructions as to the application of the presumption would be thus: The jury should be instructed that the burden of proof is upon the plaintiff to establish all the controverted allegations of his complaint by a fair preponderance of the evidence, and defining preponderance of the evidence; that when a situation is shown which necessarily infers negligence on the part of defendant, or *res ipsa loquitur,* the burden then devolves upon defendant to furnish an explanation or rebuttal of that presumption of negligence, by producing evidence of his due care and proper precaution, under the circumstances and conditions necessarily within defendant's exclusive control. If then, after considering such explanation, on the whole case and on all the issues as to negligence, injury and damages, the evidence still preponderates in favor of the plaintiff, plaintiff is entitled to recover; otherwise not." *Briglio v. Holt & Jeffery,* 85 Wash. 155, 147 Pac. 877.

It is evident that the trial judge gave such weight to the inference of negligence arising out of the

unexplained failure of the control mechanism as he thought it warranted; that, weighing this inference with the other testimony in the case, he reached the conclusion that the respondent was not guilty of actionable negligence. If this case had been tried to a jury, rather than the court, the rule of *res ipsa loquitur* would have carried the case beyond a nonsuit to the jury, but the weight of the inference would thereafter be for the jury, as it was in this case for the trial court.

A careful reading of the record does not warrant a reversal of the trial court's findings. As the trier of the facts, it was in a better position to weigh the evidence in the light of surrounding circumstances, and we cannot say that the evidence preponderates against its findings.

The judgment will be affirmed.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ., concur.