64 P.(2d) 388

## PIONEER IRRIGATING DITCH CO. v. BLASHEK.

### No. 4156.

Supreme Court of New Mexico.

Jan. 7, 1937.

Rehearing Denied Feb. 15, 1937.

G. L. Reese, Sr., of Roswell, for appellant.

Askren & Watson, of Roswell, for appellee.

BRICE, Justice.

This action was brought by the appellee (plaintiff below) against the appellant (defendant below) to enjoin him from diverting water from North Spring river in Chaves county, N. M., to the use of which appellant claims the right. The parties will be styled plaintiff and defendant as in the court below.

At the request of the defendant the court made certain findings of fact and refused certain others requested. From these findings and requested findings we have determined the facts as we think the court should have found.

The plaintiff, together with the Eureka Irrigation Ditch Company, the North Spring River Center Ditch Company, and the North Spring River Ditch Company, entered into a written agreement on April 29, 1905, selecting one Mark Howell as an arbitrator to determine their respective rights to the use of water flowing in the North Spring river. The defendant's predecessor in title was not a party to this agreement, though his rights were determined.

Mark Howell found that the flow of the river (which was seventy second feet) should be divided among the appropriators as follows:

"To the Pioneer Ditch Co., 18/70 of said water.

"To the North Spring River Center Ditch Co., 12/70 of said water.

"To the Eureka Ditch Co., 18/70 of said water.

"To the Roswell Mill Ditch, 14/70 of said water.

"To the North Spring River Ditch Co., 8/70 of said water."

There was nothing to show how much water had been actually applied to a beneficial use. A suit was filed in the territorial district court of Chaves county, entitled "Pioneer Ditch Co. v. George Frank Blashek, No. 870," in which it was determined that the plaintiff's right was prior to that of the defendant's (this defendant's predecessor in title) and that the latter's rights were subject to the rights of the former; and this defendant's predecessor in title had no prescriptive rights; and further: "The court further finds that the proffered apportionment of fourteen second feet of water to the defendant was for an amount equal or greater than the defendant is entitled under the law and the evidence." An injunction was then ordered restraining defendant's predecessor in title from diverting more than fourteen second feet of water from the North Spring river. "And that all the balance of the water in said river at this point be permitted to flow down said river to the Pioneer Ditch." Later this decree was modified so that the amount of water which defendant's predecessor in title could divert was 14/70 of the flow of the river, and no more. The decree provided further that a weir should be built so that no more could be diverted. The modification order, in so far as it is material here, reads as follows: "The court further finds that the proffered apportionment of fourteen-seventieths of the water at all times flowing in North Spring River to the said defendant was for an amount equal or great-

er than the defendant is entitled under the law and the evidence."

As suggested by defendant in his brief, it would appear that the territorial district court had before it the Mark Howell apportionment as a basis for the decree, as the amount apportioned to defendant's predecessor in title corresponded to that settlement. The parties agree it was the first determination of the rights of the respective parties, and we will so treat it. There was another decree in this same case entered by Judge John T. McClure of the state district court on the 6th day of June, 1912, in a proceedings for contempt, in which it was charged that defendant's predecessor in title had violated the injunction in the earlier decree. The former decree was construed by Judge McClure as follows:

"(1) That the final decree rendered in this action on the 20th day of March, 1909, was based and predicated upon the fact that the flow of water of the North Spring River, from which both parties to this action have a water right, would fluctuate from time to time, that is, that the quantity of water flowing in said river would substantially vary at different times.

"(2) That said final decree provided for said fluctuations in the flow of the water in said river and instead of granting defendant a fixed amount of water from said North Spring River decreed to him a fixed fractional part of said water varying in quantity as the entire flow varied or fluctuated in quantity."

A portion of Judge McClure's decree settling these water rights is as follows: "It is therefore ordered, adjudged and decreed that the dam and headgate or intake of defendant's ditch be without delay and immediately so altered, changed and arranged under the direction and superintendency of the said W. A. Wilson, that the same will divert fourteen-seventieths of the entire flow of the water of said North Spring River and no more, be the amount much or little."

It is clear that Judge McClure did not intend to change the rights of the parties as fixed by Judge Pope's decree; so that at the time of the last decree, the rights of the parties may be stated as follows: (1) The plaintiff's water rights were prior to and superior to those of defendant's predecessor in title. (2) No prescriptive rights up to the 20th day of March, 1909 (the date of the last decree entered by Judge Pope), existed or were running in favor of defendant. (3) On the 6th day of June, 1912, defendant's predecessor in title was entitled to divert 14/70 of the entire flow of North Spring river into his ditch, and no more, "be the amount much or little." At the dates of the several decrees mentioned, the other water right interests in the river, as shown by the Howell apportionment, existed but were abandoned about 1920. The flow of the river now is about 2 second feet, but was 70 second feet at the time of Judge Pope's decrees. Except for the decree of Judge McClure, which seems to have been acquiesced in by all the parties to that suit, the plaintiff, under its prior appropriation, would be entitled to all of the water flowing in the river. But irrespective of existing priorities, Judge McClure's decree seems to have awarded defendant 14/70 of the flow of the river. Such being the case, it may be assumed that the rights of the parties are settled on that basis and are binding now, unless the evidence shows some change in the rights since that decree.

W. A. Wilson testified that by appointment of Judge McClure, he was in charge of the apportionment of the water from the date of the 1912 decree for four or five years; that he made a weir which turned 14/70 of the water of the river into defendant's ditch; that the flow of the river was not 70 second feet at that time nor thereafter; that he continued dividing the water in this proportion for four or five years until the flow had decreased so that the water users could not longer afford to pay his charges. He gave no testimony regarding the apportionment of the water after his official duties expired, except in a general way he said that all of the water users, except defendant's predecessor in interest, had practically abandoned their water rights. He testified to some measurements he had recently made, which showed defendant was using over half the water in the river at his headgate. Defendant's brother, Pat Blashek, testified that his father and he together had for thirty years beneficially used all the water diverted into their ditch. Frank Blashek testified that defendant and his predecessor in title had used all the water diverted into their ditch since the weir was constructed by W. A. Wilson

in 1912. He measured the flow of water in 1931 (this suit was filed on the 19th day of July 1934), which showed there was flowing 360 gallons per minute in defendant's ditch and 1,185 gallons per minute in plaintiff's ditch, measured at its headgate three-quarters of a mile below the Blashek weir. Two other measurements were made that year which showed about the same amount of water flowing in the defendant's ditch. He made no measurements in 1932, but in July, 1934, he and W. A. Wilson made measurements showing the plaintiff's ditch had 742 gallons and defendant's 405 gallons a minute flowing therein. He made a number of other measurements in July and August of 1934, but none of these showed the measurement of the water that went into the river at Blashek's ditch. This testimony only confirms that of the plaintiff to the effect that defendant diverted more than 14/70 of the water at its headgate from 1931 until the trial of the case in 1934. This testimony does not prove an abandonment of plaintiff's water right, nor a prescriptive right (if such a right can be acquired under our law) in the defendant, as there is no proof that prior to 1931 defendant was taking more than 14/70 of the flow of the river. There was introduced in evidence a decree of the United States District Court for the District of New Mexico, establishing a water right in plaintiff in an amount in excess of the flow of the river, but defendant was not a party to that suit and the decree of course is not binding on him. None of the decrees introduced in evidence establish the amount of water the parties have applied to a beneficial use, nor is there any evidence upon which this could be determined. But as plaintiff had appropriated some water the right to the use of which was superior to defendant's water rights, and also to the abandoned rights, and which originally amounted to 18 second feet of water, in the absence of any evidence from which it could be determined the amount of water each of the parties is entitled to receive (and there is no evidence from which this can be determined), the last decree of court must prevail. The defendant therefore is entitled to 14/70 of the water flowing in the river, and the plaintiff to the balance, as the abandoned water is not sufficient to make up the prior appropriation of the plaintiff.

It follows that the decree of the district court is correct, and accordingly it is affirmed.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.