73 P.2d 316

### In re WHITE'S ESTATE.

### No. 4265.

Supreme Court of New Mexico.

Sept. 28, 1937.

Rehearing Denied Nov. 13, 1937.

Douglass K. Fitzhugh, of Hot Springs, for appellants.

J. L. Lawson, of Alamogordo, for appellee.

BRICE, Justice.

This appeal is from a decree in the district court settling the property rights and distributing the assets of an estate. The facts, as found by the court, are substantially as follows:

Morris Downey White died intestate on the 13th day of February, 1920, leaving as heirs and next of kin Mildred Byron White, his wife, and William C. White, a son by a former marriage. Thereafter Mildred Byron White married Douglass K. Fitzhugh, to which union there was born Collene Mildred Fitzhugh and Bonnie Lee Fitzhugh, both minors. Mildred Byron Fitzhugh died intestate on the 2d day of November, 1934, leaving as her heirs at law her husband, Douglas K. Fitzhugh, and the two minor children just mentioned. The only property left by the decedent, Morris Downey White, was cash derived from the unpaid balance of installments of

a life insurance policy on his life, amounting to $3,104.67; presumably payable to his estate.

The court held as a conclusion of law that William C. White was entitled to three-fourths of the insurance money and the Fitzhughs one-fourth; that the heirs of Mrs. Fitzhugh were not entitled to a widow's allowance of $500 which they claim Mrs. Fitzhugh was entitled to receive from the estate and to which they had succeeded as her heirs.

If the insurance money was community property then five-eighths thereof was the property of Mrs. Fitzhugh and three-eighths that of William C. White (N. M.Comp.St.1929, § 38-105); but, if it was the separate property of the husband, then Mrs. Fitzhugh was entitled to one-fourth thereof and William C. White to the remainder (section 38-106, N.M.Comp.St. 1929). The court failed to find whether the property was community, or the separate property of the husband, and it may have been either. It has been generally held in community property states that a life insurance policy payable to the estate of a person is his separate property if the policy was obtained before his marriage, McKay on Community Property (2d Ed.) § 479, and community property if the policy was obtained subsequent to marriage, McKay on Community Property (2d Ed.) § 480.

The court, in Succession of Le Blanc, 142 La. 27, 76 So. 223, 225, L.R.A.1917F, 1137, said on the subject: "Life insurance in favor of the estate, the executors or administrators, of the person insured, forms a part of his estate at his death; and the status of the proceeds or avails of such life insurance—that is, whether it is community property or property of the separate estate of the insured—depends upon whether the contract of insurance was made during the marital community or when the insured was single. The status of the proceeds or avails of such insurance, whether community property or the separate property of the insured, is not governed by the marital status of the insured at the time of his death. See Succession of Buddig, 108 La. 406, 32 So. 361; Succession of Verneuille, 120 La. 605, 45 So. 520; Succession of Roder, 121 La. 692, 46 So. 697, 15 Ann.Cas. 526."

There is no finding of fact on this question. This court has decided in many cases that property acquired during marriage is presumed to be community property in absence of proof on the question, Barnett v. Wedgewood, 28 N.M. 312, 211 P. 601; Carron v. Abounador, 28 N.M. 491, 214 P. 772; Roberts v. Roberts, 35 N.M. 593, 4 P.(2d) 920; and, in the absence of any evidence of whether property belongs to the separate or community estate, it is presumed to be community property, but this presumption may be overcome by proof that it is separate property. Strong, Trustee, v. Eakin et al., 11 N.M. 107, 66 P. 539. We then can add to the findings of the court the presumption that the property in question was the community property of Morris Downey White and his wife.

It follows that she was entitled to five-eighths thereof at the death of White.

The next question is whether the wife was entitled to $500 allowance, under section 38-107, N.M.Comp.St.1929, which is as follows: "When the decedent leaves a widow, all personal property which in his hands as head of a family would be exempt from execution, after being inventoried and appraised, shall be set apart to her as her property in her own right, and shall be exempt in her hands as in the hands of the decedent." Amended chapter 90, N.M. Laws, 1937.

Section 48-117, N.M.St.1929, is as follows: "Any resident of this state who is the head of a family, and not the owner of a homestead, may hold exempt from levy and sale, real or personal property to be selected by such person, his agent or attorney, at any time before sale, not exceeding five hundred dollars in value, in addition to the amount of chattel property otherwise by law exempted."

The claim is that as the decedent was entitled to claim $500 exemption under section 48-117 N.M.Comp.St.1929, above set out, that his wife was entitled to this amount of money by virtue of that statute and section 38-107, which we have quoted. In construing said section 38-107, we stated in White v. Mayo, 35 N.M. 430, 299 P. 1068, that this statute vested in the widow an unqualified right to that property immediately upon the husband's death. This being true, then the only question is whether the proceeds of the insurance policy comes within these two statutes; for, according to the findings of the district court, the decedent had no property except the life insurance policy, and this was in effect a finding that he did not have a homestead. As he had a wife and child, he was the head of a family.

It was intended by section 38-107, N.M. Comp.St.1929, supra, that after the personal property of an estate has been inventoried and appraised, any thereof which would have been exempt from execution sale, etc., in the hands of the deceased, if he was alive, should be set apart to the widow as her property. The insurance policy was the only property owned by the estate. It in time would be paid in cash. The widow was entitled to have paid to her out of the proceeds of the policy the sum of $500. It was personal property of a value exceeding that sum.

As it is necessary to reverse the case, we have concluded that, in the interest of its correct determination, the question of whether the insurance policy was community or separate property should be determined by the district court.

The cause will be reversed and remanded to the district court, with instructions to allow the heirs of Mrs. Fitzhugh the sum of $500 out of the proceeds of the insurance policy; determine from the evidence introduced, or further evidence if necessary, whether such policy was the separate property of White or the community property of him and his wife; and apportion the balance of the proceeds of

the policy (after deducting the $500) among the heirs at law of the decedent in accordance with the statutes of descent and distribution of estates of decedents.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.

On Motion for Rehearing

BRICE, Justice.

It is urged on rehearing that appellant did not properly argue his assignment of errors, and therefore they were abandoned. It must be admitted that his argument is meager, states but little except conclusions, and might well have been treated as abandoned. However, this question was not raised originally by appellee, and it will not be considered on motion for rehearing.

Appellee asks if the district court was required to make specific findings on the question of whether the property was community or separate, in view of the fact he had concluded that three-fourths of the property belonged to appellee and one-fourth to appellant, and states, "This was necessarily a finding and conclusion that the property was separate estate." This seems to be incorrect. It is a conclusion of law that the property should be thus divided; whereas the facts found, supplemented by presumptions of fact not controverted, establish that it was community property; therefore the district court's conclusion was erroneous.

It is remarkable that the only testimony introduced at the trial of this case was that by appellee to establish that he was the son and heir of Morris Downey White. This the court found. No testimony was introduced to support any other finding of the trial court. We will assume that the findings of fact were agreed to by the parties, as exceptions were taken only to the court's conclusions of law. Under a well-established rule findings of the court not objected to are the facts upon which the case must rest in this court.

Appellant cites Singleton et al. v. Cheek et al., 284 U.S. 493, 52 S.Ct. 257, 76 L.Ed. 419, 81 A.L.R. 923, to the effect that under the federal statute the present value of installments of soldiers war risk insurance not due at the time of the death of the designated beneficiary must be paid to the estate of the insured; and descends to his heirs at law as of the time of his death. But there is no finding of the court as to the source of the insurance, and we cannot assume, in the absence of a finding, that it was "war risk insurance."

We are admonished by appellee that we are casting upon the trial judge the responsibility for the error; that we should not presume or infer "that a judge of such well-known integrity and legal ability did not investigate and obtain the facts as to the date of marriage of deceased White, and of the policy and to

know and have the law before him as to whether the proceeds of the insurance were separate or community property." What right have we to presume that the district court went outside the record and made such investigation? He is presumed to decide the case upon the law, and the evidence as presented by the respective parties. We will therefore not infer or presume that the district judge, though he may be well known for integrity and legal ability (a matter not in dispute), did, or had the right to, make an independent investigation and obtain facts upon which to decide the case in his court. We would much prefer to, and do, hold that the case was tried orderly and properly. Nor do we believe that our decision is a reflection on the "integrity and ability of the trial judge," as appellee suggests. It has been the history of all appellate courts that the judgments of trial judges, some well known for integrity and legal ability, are at times reversed.

It is stated in appellee's brief: "Is it not also to be presumed that the attorney for Appellants would have furnished the court, and made a record of the date when the policy was taken out, and of the second marriage; if he contends that the money was community property? Also that the attorney for Appellee had the information and the law to show the Court that the money was separate property for the Court to have used his method of distribution to the heirs?"

■ The appellant could rely on the presumption that the insurance money was community property. This placed the burden upon appellee to rebut this presumption, which he failed to do.

■ We are not authorized to presume that "the attorney for appellee had the information and the law" to show that the money was separate property. If he did possess the information, it should have been introduced in evidence. The certificate of the district judge states that the bill of exceptions contained all the evidence introduced at the trial; so there can be no presumption that there was evidence to support the judgment of the court.

Other questions are raised but, like those answered, are without merit. Ordinarily the case would be reversed and rendered here; but some suggestions in the record, outside the findings, indicate the policy may have been separate property; in deference to which, we reversed the case for a new trial on that question.

The motion for a rehearing is denied.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.