STATE EX REL. RICH, RELATOR, *v.* GARFIELD COUNTY ET AL., RESPONDENTS.

No. 8752

Submitted December 17, 1947. Decided January 26, 1948.

188 Pac. (2d) 1004

Mr. W. B. Leavitt, of Miles City, for appellant.

Mr. Robert E. Purcell, of Jordan, Mr. R. V. Bottomly, Atty. Gen., Mr. Alfred F. Dougherty, and Mr. M. Baxter Larson, Asst. Attys. Gen., and Messrs. Farr & Colgrove, of Miles City, for respondents.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Relator brought this proceeding in mandamus to compel Garfield county and its commissioners to sell to him certain described land consisting of about 640 acres at the appraised value thereof and to set aside a sale made to him at public auction. The lands in question were acquired by the county through tax deeds. Prior to March 4, 1942, the county had offered them for sale at public auction but no sale was made. On March 4 the lands were leased by the county to relator for a term of five years subject to the right of the county to sell at any time.

On November 5, 1945, W. G. Roberts made application to the board of county commissioners to purchase the land for a sum in excess of the appraised value. The lands consist of two tracts, one of which was then of the appraised value of $159 and the other $160. The offer to purchase was for $175 for

each tract. The county commissioners thereupon re-appraised the land at $175 for each tract and re-advertised the property for public sale to be held on January 8, 1946.

Relator received a letter notifying him of these facts and he thereupon offered to buy the land at the appraised value. His offer was refused. He thereupon appeared at the time and place fixed for the sale and was the highest bidder, having bid $1,000 for each tract. Roberts bid as high as $975 for each tract but declined to bid higher.

Relator testified that the land was not worth what he bid for it but that it was so situated with reference to his other land that if any one else owned it the value of his other lands would be destroyed. He takes the position that under Chapter 147, Laws of 1943, he has the absolute preference right to buy the property at the appraised value.

The county and its commissioners take the position that it is discretionary with the commissioners under Chapter 147, Laws of 1943, and Chapter 171, Laws of 1941, to sell at public auction when to do so is to the best interest of the county and that as a matter of custom and practice they have allowed the lessee the preference right to buy at the appraised value in cases only where the offer is less than or equal to the appraised value, and that they never allow the lessee the preference right to buy at the appraised value when the offer is in excess of the appraised value.

The district court upheld the action of the county commissioners and this appeal followed.

Section 1 of Chapter 147, Laws of 1943, provides: "Whenever tax deed lands now held, or hereafter acquired, by any county of this state, have been leased pursuant to the provisions of Section 5, Chapter 171 of the laws of the twenty-seventh legislative assembly, and thereafter the board of county commissioners shall receive an offer for the purchase of said lands under the provisions of Section 4, Chapter 171 of the laws of the twenty-seventh legislative assembly, the said board shall by registered mail notify the lessee, who shall have a period of

thirty (30) days after the mailing of such notice within which he may purchase the leased property at the appraised value thereof. Provided that nothing herein contained shall prohibit the board from, at any time, reappraising, readvertising and offering such land at public sale under the provisions of Section 1, Chapter 171 of the laws of the twenty-seventh legislative assembly.''

The last sentence of that section clearly authorized the board to reappraise and readvertise the property for sale at public auction by posting the notices and otherwise complying with section 1 of Chapter 171, Laws of 1941.

Were the statute open to the construction contended for by ▉ relator it would be unconstitutional and such construction should not be adopted if the statute can be construed so as to uphold its validity. Under our state Constitution public moneys which either come from or can only be replaced through the power of taxation cannot be given away. Gift enterprises are banned so far as the state, county, city, town, municipality, or other subdivisions of the state are concerned.

The facts above recited fully demonstrate that if relator has the preference right to purchase at the appraised value a gift will result to him.

This is prohibited by section 1, Article XIII of the Constitution, reading: ''Neither the state, nor any county, city, town, municipality, nor other subdivision of the state shall ever give or loan its credit in aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or a joint owner with any person, company or corporation, except as to such ownership as may accrue to the state by operation or provision of law.''

This question was thus ruled upon under similar facts in Herr v. Rudolf, N. D., 25 N. W. (2d) 916, 922, where the court said, ''The plaintiff further insists that the statute violates Section 185 of the Constitution of North Dakota in that it makes a donation to a privilege buyer by enabling him to buy at the

appraised value, though others are ready and willing to pay a greater price. We think the contention is well grounded. The instant case clearly demonstrates this. The plaintiff offers to pay $2,600 for this particular tract of land and is ready and willing to buy it at whatever amount it may be necessary for him to bid up to $3,000. Yet, under the statute, the defendant Rudolf is granted the privilege to buy it for $2,500, and the defendants the State Treasurer as trustee, the Bank of North Dakota and the members of the Industrial Commission have conceded this right and intend to and will sell the land to Rudolf at the latter figure. As a consequence the trust fund will suffer a certain loss of $100 and a possible loss of $500 and the State must make this loss good. Thus Rudolf in effect will receive a donation from the State in the amount of the loss contrary to the prohibition contained in Section 185 of the Constitution.''

Whether we would condemn the statute, Chap. 171, Laws 1941, that gives the former owner a preference right to purchase by paying the original tax, penalty and interest, we need not here determine.

As to the former owner, there is authority that the statute simply operates as an extension of the right of redemption. Washington Nat. Inv. Co. v. Grandview Irr. Dist., 175 Wash. 644, 28 Pac. (2d) 114. But here we are dealing with a lessee and not the former owner and as to him if the statute were open to the construction contended for by him it would be invalid as in conflict with section 1, Article XIII of the Constitution.

The judgment of the trial court was right and it is affirmed.

Mr. Chief Justice Adair and Associate Justices Choate, Gibson, Metcalf, concur.