245 P.2d 149

**BELMORE v. STATE TAX COMMISSION
et al. (Hittson, Third-Party Respondent).
No. 5309.**

Supreme Court of New Mexico.
April 22, 1952.

Rehearing Denied June 24, 1952.

Martin A. Threet, Albuquerque, for appellant.

H. A. Kiker, Sante Fe, Haynes M. Miller, Roswell, for third-party respondent.

COORS, Justice.

This action in mandamus was brought by the relator against the New Mexico State Tax Commission and the individual members of that Commission to compel the Tax Commission to sell to relator, as provided by Sec. 76–740 N.M.S.A.1941 Lots 8, 9 and 10 in Block 33 of the Original Townsite to the City of Tucumcari, New Mexico. The statute under which relator claims a right to repurchase is as follows:

"The person whose title to property has been extinguished by the issuance of a tax deed to the state shall have the first and prior right to repurchase such property, provided that application for such repurchase is received by the state tax commission before any other application to purchase such property is received and accepted by said commission. As soon as practicable after the effective date of this act, the state tax commission shall notify all persons whose property has been acquired by the state under tax deed of the provisions of this act and of the most favorable terms upon which property may be repurchased hereunder. Such notification shall be by mail addressed to such address as may be reasonably ascertained by the said commission. The requirement for such notice shall not be construed as affecting the validity of any sale of property held by the state under tax deed. Any person entitled to repurchase under the provisions of this section shall not be required to pay more than the amount of the delinquent taxes, penalties, interest and costs accrued against the property sought to be so repurchased, except that there shall, in any case in which such repurchase is made by contract, be charges for interest on deferred payments and for current taxes, In any case in which the accumulated

taxes, penalties and interest against such property are, by the person making application for repurchase, asserted to be in excess of the value of the property, the state tax commission shall cause the property to be appraised, and if the appraised value is less than the amount of taxes, penalties and interest, the person applying for repurchase under this section may repurchase for such appraised value, if the repurchase is for cash, or for such appraised value plus the charges hereinabove specified if the repurchase is under contract."

An alternative writ of mandamus was issued and served. The respondent answered, stating in substance that the relator was not entitled to repurchase said Lots 9 and 10, but that he was entitled to repurchase said Lot 8 upon paying certain sums of money for back taxes; that relator's father, prior to his death, had owned the three lots but had conveyed Lots 9 and 10 by quitclaim deed to C. H. Hittson, who filed a third party answer, and who claimed the prior right to purchase them and that the relator had no preference right to purchase said Lots 9 and 10.

C. H. Hittson, third party respondent, answered relator's complaint, denying that relator had ever owned any interest in said Lots 9 and 10, and denying that he was ever at any time the holder of the legal title to them and had no prior right to repurchase

Hittson claims to have the first and prior right to repurchase Lots 9 and 10 under the statute quoted by virtue of a quitclaim deed delivered to him by the father of relator, who had owned the lots at the time a tax deed was delivered to the State of New Mexico, and whose first and prior right to repurchase the lots was transferred to him by the quitclaim deed which was dated January 14, 1939.

The trial court made the following findings of fact and conclusions of law, which we deem material to a decision, to-wit:

"1. That Harrold B. Sellers, Emilio Provincio and W. H. Duckworth, are the duly constituted, qualified, and acting members of the State Tax Commission of the State of New Mexico.

"2. That C. H. Hittson is a resident of Quay County, New Mexico.

"3. That D. A. Belmore, Sr., father of the relator, on and prior to the date of the issuance of the tax deed, hereinafter referred to, was the owner in fee simple of the following described real estate, situated in Quay County, New Mexico:

"Lots Eight (8), Nine (9), and Ten (10) in Block Thirty-three (33), Original Townsite to the City of Tucumcari, New Mexico

"4. That on the 13th day of May, 1938, the County Treasurer of Quay County, New Mexico, made, executed,

and delivered to the State of New Mexico, a tax deed conveying to the State of New Mexico Lots 8, 9 and 10 in Block 33 of the original townsite of the City of Tucumcari, Quay County, New Mexico, * * *.

"5. That the relator, D. A. Belmore, Jr., is the son of D. A. Belmore, Sr., * * * and under and by virtue of the terms of the Last Will and Testament of D. A. Belmore, Sr. the relator, D. A. Belmore, Jr., inherited all of the real estate in the State of New Mexico belonging to the said decedent.

"6. That on January 14, 1939, D. A. Belmore, Sr. made, executed, and delivered to the third party respondent, C. H. Hittson, a quitclaim deed conveying to the said C. H. Hittson all right, title, equity, or interest in or to Lots 9 and 10 in Block 33 of the original townsite of the City of Tucumcari, New Mexico, * * *

"7. In Cause No. 8341 of the District Court of Quay County, which was a quiet title suit, the court found as a fact that the quitclaim deed from David A. Belmore, Sr. to C. H. Hittson was void as a conveyance of title due to the fact that it was executed and delivered subsequent to the conveyance by tax deed to the State of said three lots.

"8. For many years the Tax Commission has construed Section 76–740 of the 1941 Compilation, as amended, in such a manner as to allow the heirs or assigns of a person whose title was extinguished by the issuance of a tax deed to the State, to repurchase said property in the same manner as the former owner.

9. By the will of David A. Belmore, Sr., relator acquired the right to repurchase Lot 8, Block 33, Original Townsite to the City of Tucumcari, New Mexico.

"10. C. H. Hittson, by the quitclaim deed, acquired the equitable right to repurchase Lots 9 and 10, Block 33, Original Townsite to the City of Tucumcari, New Mexico.

* * * * * *

"13. That the third party respondent, C. H. Hittson, failed to take and perfect an appeal from the final judgment in Cause No. 8341, District Court, Quay County, New Mexico, wherein the trial court adjudicated the invalidity of his said quitclaim deed and ordered the same stricken from the record."

Conclusions of Law

"1. D. A. Belmore, Jr., the relator, inherited the right to repurchase Lot 8, Block 33, Original Townsite to the

City of Tucumcari, New Mexico, in the same manner as the original owner.

2. The quitclaim deed from David A. Belmore, Sr. to C. H. Hittson could not convey title, but did constitute an assignment of the owner's right to repurchase. Said C. H. Hittson is entitled to repurchase Lots 9 and 10, Block 33, Original Townsite to the City of Tucumcari, New Mexico, in the same manner as the former owner.

"3. The decree in Cause No. 8341, declaring said quitclaim deed from Belmore, Sr. to C. H. Hittson void as a conveyance of title, is not res adjudicata on the question of the validity of said deed as an assignment of the right to repurchase, and said right to repurchase Lots 9 and 10, Block 33, Original Townsite to the City of Tucumcari, was assigned by said quitclaim deed to Hittson, who now has that right.

\* \* \* \* \* \*

"5. The Alternative Writ should be made permanent as to Lot 8, Block 33, Original Townsite to the City of Tucumcari, New Mexico.

"6. The Alternative Writ should be dismissed as to Lots 9 and 10, Block 33, Original Townsite to the City of Tucumcari, New Mexico."

(Certain findings and conclusions unnecessary to a decision have been omitted).

Upon these findings and conclusions the trial court entered its order and judgment, making the alternative writ permanent as to Lot 8 of Block 33 and quashed and discharged it as to said Lots 9 and 10 of Block 33 of the City of Tucumcari. Insofar as the third party respondent is concerned the trial court did not in its judgment make any determination as to whether he had the right to repurchase the lots in question from the State Tax Commission. The court in its judgment went no further than to determine that the relator was not entitled to a peremptory writ of mandamus requiring the State Tax Commission to convey to him said Lots 9 and 10 of Block 33.

The trial court concluded that relator inherited the right from his father to repurchase Lot 8; that the quitclaim deed from D. A. Belmore, Sr. to Hittson did not convey the title, but did constitute an assignment of the owner's right to repurchase under Sec. 76–740, N.M.S.A.1941, supra.

We have held that the prior right to purchase as provided by the statute in question was an extension of the time in which the former owner could redeem the lots from the sale for taxes. Langhurst v. Langhurst, 49 N.M. 329, 164 P.2d 204; Sanchez v. State Tax Comm., 51 N.M.

154, 180 P.2d 246. In the Langhurst case we said [49 N.M. 329, 164 P.2d 205]:

"We think the exercise by the 'person whose title to property has been extinguished by the issuance of a tax deed to the state,' of the exclusive privilege accorded to him is nothing more nor less than redemption of the property and the title thereto which has been so extinguished.

"The transaction is not essentially different from redemption before a tax deed is issued.

"Section 76–708 provides that: 'the tax sale certificate shall vest in the purchaser * * * the right to a complete title to the property described therein,' subject to the right of redemption as provided by law. In neither case (under Sec. 76–708 or 76–740) is the sale of the taxed property nor the subsequent proceedings a final and irrevocable divestiture of the title of the owner, or former owner, so long as the privilege of recapture extended to such owner, or former owner, may be lawfully exercised.

"As between redemption before deed is issued to the state and repurchase afterwards the result, so far as the person whose title has been extinguished is concerned, is the same. The mechanics only, are different. * * *"

There is authority elsewhere to the same effect. State ex rel. Rich v. Garfield County, 120 Mont. 568, 188 P.2d 1004; Genero v. Ewing, 176 Wash. 78, 28 P.2d 116. But there are cases to the contrary: State of N. D. v. Durupt, 8 Cir., 148 F.2d 918 (construing North Dakota's statute); Beckman Bros. v. Weir, 120 Mont. 305, 184 P.2d 347. Some courts hold that the right given the former owner to repurchase after the delivery to the state of a tax deed is a special act of grace involving no vested right, and that such right could be withdrawn at any time by the legislature. Chaney v. Coos County, 168 Or. 390, 123 P.2d 192; Stutsman v. Smith, 73 N.D. 664, 18 N.W.2d 639. This seems to be the effect of Yates v. Hawkins, 46 N.M. 249, 126 P.2d 476, 478, in which we said:

"The right to repurchase is not a vested property right which cannot be changed by a subsequent act of the Legislature.

* * * * * *

"Upon the basis of this statement, we do not see how this case can be taken as authority for the proposition that a preference right given to the former owner of the property to repurchase property sold to the State for taxes is in the nature of the same right as an ordinary period of redemption afforded to the former owner to redeem

his property before title passes to the State.

\* \* \* \* \* \*

" \* \* \* Each session of the Legislature could change the method by which a former owner could repurchase land acquired by the State under its delinquent tax law. The Legislature could even abolish any preference right given by a former session if such right or privilege had not been acted upon by a former owner during the life of the statute. \* \* \* "

The Yates case was not mentioned in the opinions of this court in the Langhurst and Sanchez cases, supra.

Other New Mexico cases construing this statute are Kershner v. Sganzini, 45 N.M. 195, 113 P.2d 576, 134 A.L.R. 1290 and De Baca v. Perea, 52 N.M. 418, 200 P.2d 715.

 The present case was tried below on the theory that the right to repurchase was assignable. Relator claims it through his father's will. Respondents assert that by virtue of the quitclaim deed the third party respondent was possessed of the right to repurchase Lots 9 and 10 and that relator was possessed of the right to repurchase Lot 8 as the sole legatee and devisee under his father's will. The district court's findings indicate that it followed this theory in its decision. The agreement of all the parties and the trial court that

the right to repurchase is an interest which the former owner may assign or devise or which will pass to his heirs if he dies intestate will be treated as the law of the case. Mares v. N. M. Public Service Co., 42 N. M. 473, 82 P.2d 257. We are of the opinion that it is not only the law of the case but is the correct interpretation of the New Mexico statute, Sec. 76–740, N.M.S.A. 1941, supra. Of course, the one claiming the right to repurchase under the former owner, either as assignee, heir or devisee, acquires only the same right or privilege the former owner had and the right must be exercised in the manner and within the time provided by the statute in effect at the time of repurchase or the right is lost. De Baca v. Perea, supra. In the last mentioned case the court held that a devisee of a former owner had made application to repurchase after the statutory period for repurchase had expired and therefore the devisee applicant had no such statutory right of repurchase. The question of whether or not the prior right of repurchase was such a right or privilege as could be assigned, devised or passed by inheritance was apparently not directly raised or discussed by the court but the court seemed to assume that such was the law as is seen from the following brief quotations from the opinion [52 N.M. 418, 200 P.2d 716]:

"In addition to the right to redeem the property before the issuance of a

tax deed to the State, the law gives the *former owner, or one claiming under him,* the first and prior right to repurchase the property from the State after the issuance of a tax deed to it by the county treasurer by complying with the provisions of Section 76–740, 1941 Compilation. * * * *the former owner, or one claiming under him,* must comply with its provisions. * *

" * * * While the legislature provided by the Act that *a former owner, or one claiming under him,* could claim his preferential right and offer to repurchase from the State at any time before any other application and sale was made, this does not mean that *such owner, or one claiming under him,* may delay making his application and offer to repurchase and claim his preferential right until after another has made his for such sale * * *." (Emphasis ours).

While there may be some differences and likewise some similarities in the right of redemption and the right of repurchase granted by our statutes as discussed in Yates v. Hawkins, supra, and Langhurst v. Langhurst, supra, we believe both rights may be assigned, inherited or devised.

█ Both statutes have a fundamental common purpose which is to grant or afford relief to delinquent taxpayers who have lost or are about to lose their property.

Such statutes should be liberally construed in favor of the right to redeem and the right to repurchase.

In 51 American Jurisprudence, Secs. 1105 and 1106, pages 958 and 959, we find the following:

"In some jurisdictions, statutes somewhat similar to redemption statutes give former owners of land which has been purchased in by the county or other political subdivision under tax foreclosure proceedings the right to repurchase such property upon payment of taxes, penalties, and interest.

"Who May Redeem—Generally. The right or privilege of redemption from a tax sale is ordinarily granted to and may be exercised by the former owner of the forfeited land, and his successors in interest, or any other person who has a legal or equitable interest in the land. In this respect, as in other respects, the redemption statutes are liberally construed in favor of the right of redemption. The right is not personal to the owner at the time of the tax sale; while it is not an estate in land, it is a statutory privilege which passes to the heir of the owner in the same manner as the land itself. The law treats the right of redemption as an interest which the owner may convey or devise and which will pass to his heirs in case of death intestate."

The first contention of appellant is stated by him as follows:

"The trial court erred in finding and concluding that, although the trial court in Cause No. 8341 held the quitclaim deed from D. A. Belmore, Sr. to C. H. Hittson null and void and of no effect, and ordered the same cancelled of record, that such quitclaim deed nevertheless, constituted an assignment of the owner's right to repurchase property sold for delinquent taxes pursuant to Sec. 76–740, as amended, 1941 Comp., and that C. H. Hittson was entitled to repurchase Lots 9 and 10, Block 33, Original Townsite of the City of Tucumcari in the same manner as the former owner, D. A. Belmore, Sr., by virtue of such quitclaim deed."

It should be stated that this Point I of appellant makes no reference to any specific finding of fact or conclusion of law, as required by Sec. 14(5) of Rule XV, Rules of New Mexico Supreme Court. Lea County Fair Ass'n v. Elkan, 52 N.M. 250, 197 P.2d 228. The findings of the court are the facts upon which the case must rest. In re White's Estate, 41 N.M. 631, 73 P.2d 316; Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900.

The finding to which appellant refers probably is Finding No. 7 quoted above, and the conclusion of law may be Conclusion No. 2 quoted hereinabove.

As the quitclaim deed was executed after the tax deed to the State had been executed and delivered, of course it could not convey title as the court found or concluded, because the title was already in the State. But the statuory right to repurchase was not disturbed by the tax deed. It was contemplated by the act in question that the title would be in the State at the time the right to repurchase should become effective.

While the trial court made findings of fact and conclusions of law favorable to Hittson, the decree only determined the issues between the State Tax Commission and the relator, and in doing so discharged the alternative writ as to Lots 9 and 10, the effect of which was a determination that relator had no right to repurchase as provided by Sec. 76–740, N.M.S.A.1941, supra.

The word "void" as used by the trial court in the Quay County case in concluding that the quitclaim deed in question was "void because issued subsequent to the sale by the County Treasurer to the State Tax Commission", was used in the sense of "inoperative". The reason for the holding stated by the Quay County trial court is in language so certain that it cannot be successfully questioned, and the trial court in this case, in its finding No. 7, held:

"In Cause No. 8341 of the District Court of Quay County, which was a quiet title suit, the court found as a

fact that the quitclaim deed from David A. Belmore Sr. to C. H. Hittson was void as a conveyance of title due to the fact that it was executed and delivered subsequent to the conveyance by tax deed to the State of said three lots."

This finding we believe is sustained by the record herein.. The question decided in the present case was whether the relator inherited from his father the right to repurchase. This depended upon whether his father had that right at the time of his death. At that time he had sold and assigned this right to Hittson. The improvident cancelling of the quitclaim deed of record by the District Court of Quay County because it was inoperative as a conveyance of title is immaterial. The cancelling of the deed destroyed it as a conveyance of title, but it did not transfer the right of repurchase to relator, who never owned such right. It was undoubtedly inoperative as a transfer of title because it had been previously conveyed to the State, but it constituted an assignment of the prior right to repurchase.

Contention No. 2 of appellant is as follows:

"The court erred in admitting in evidence, over relator's objections, third party respondent's Exhibit 1, being a certified copy of the quitclaim deed from D. A. Belmore, Sr. to C. H. Hittson to Lots 9 and 10."

This contention of appellant is not well taken for the reasons hereinabove stated. The court did not err in admitting in evidence the quitclaim deed in question.

Appellant's Contention No. 3 is stated as follows:

"The trial court erred in concluding that the final decree in Cause No. 8341, wherein the trial court found and concluded that the quitclaim deed from D. A. Belmore, Sr. to C. H. Hittson was null and void and of no effect, was not res adjudicata on the question of the validity of said deed as an assignment of D. A. Belmore, Sr. of the right to repurchase property sold for delinquent taxes pursuant to Sec. 76–740, as amended, 1941 Comp."

In stating this point in his brief the appellant is again remiss as was mentioned hereinabove with reference to his Point I. He makes no reference to any specific conclusion of law to which his Point 3 refers, as required by Sec. 14(5) of our Supreme Court Rule XV. The conclusion to which appellant refers in his Point 3 is probably Conclusion of Law No. 3 made by the trial court in this case, hereinabove quoted. We see no error of the court in reaching such a conclusion for the reasons we have heretofore discussed. In addition, however, we call attention to the fact that this suit as originally brought was between relator and respondent, and respondent was not a party to the Quay County suit, and the

judgment in that suit did not affect the respondent in any way. As between the original parties to this action, the Quay County judgment was not res adjudicata of any claim of the respondent in this case nor is respondent collaterally estopped thereby, for the sufficient reason that the parties and causes of action were different.

The trial court made findings in the present case to the effect that Hittson acquired the equitable right to repurchase Lots 9 and 10, but this was not followed by any judgment in favor of Hittson, which only provided that the writ be dismissed as it affected Lots 9 and 10. The respondent, in effect the State of New Mexico, is not bound by any finding of the trial court in the Quay County case affecting the claim of Hittson for several reasons:

(1) The respondent was not a party to the Quay County suit, and the cause of action is different; (2) the judgment in this action ignores any right or claim of Hittson, and is confined to the determination of issues between the relator and respondent; and (3) the senior Belmore conveyed his right to repurchase and it did not descend to relator.

But we need not further consider the rights of Hittson; they were unmentioned in the decree of the trial court. Even if the wrongful judgment pleaded as res adjudicata by the relator could have bound Hittson it certainly did not bind the State of New Mexico (which was not a party) and thus deprive it of its power to dispose of the State's property secured by tax title in the manner provided by law, whether to Hittson or any other person. If relator has not the right to repurchase it, it is no concern of his as to whom the respondent may sell the property.

See Pioneer Irrigation Ditch Co. v. Blashek, 41 N.M. 99, 64 P.2d 388, in which this court held that a federal court's decree establishing water rights was not binding on an appropriator who was not a party to the suit, and U. S. v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023, in which the United States Supreme Court held that the United States was not bound by a decree of a district court of the State of New Mexico disposing of Pueblo Indian lands in which the United States was not a party.

Regarding the binding effect of a judgment in a subsequent action between the same parties, see Paulos v. Janetakos, 46 N.M. 390, 129 P.2d 636, 142 A.L.R. 1237.

The judgment of the district court should be and is affirmed.

It is so ordered.

LUJAN, C. J., concurs.

SADLER, J., concurs in the result.

ARMIJO, District Judge, dissents.

McGHEE and COMPTON, JJ., did not participate.

Order Denying Motion for Rehearing

PER CURIAM.

This cause coming on for hearing upon appellant's motion for rehearing, and the Court having considered said motion and briefs of counsel, and being now sufficiently advised in the premises,

It is ordered by the Court that said motion for rehearing be and the same is hereby denied.

SADLER, Justice.

I concur in the order of the court denying the motion for rehearing. Furthermore, it is not out of place for me to add, even at this late day, that I saw nothing to criticize in the views expressed by Mr. Justice Coors in the opinion heretofore filed in this case wherein he discusses the cases of Yates v. Hawkins, 46 N.M. 249, 126 P.2d 476; Langhurst v. Langhurst, 49 N.M. 329, 164 P.2d 204; and Sanchez v. New Mexico State Tax Commission, 51 N.M. 154, 180 P.2d 246. See, also, recent case of Chavez v. Chavez, 56 N.M. 393, 244 P.2d 781. Accordingly, there is no disagreement on my part with the conclusions drawn by him in his opinion near the close of the discussion of the three cases first mentioned above, to-wit:

"While there may be some differences and likewise some similarities in the right of redemption and the right of repurchase granted by our statutes as discussed in Yates v. Hawkins, supra, and Langhurst v. Langhurst, supra, we believe both rights may be assigned, inherited or devised.

"Both statutes have a fundamental common purpose which is to grant or afford relief to delinquent taxpayers who have lost or are about to lose their property. Such statutes should be liberally construed in favor of the right to redeem and the right to repurchase."

The foregoing observations are recorded to clarify some uncertainty otherwise likely to arise from the fact that when the opinion of Mr. Justice Coors was filed herein, my concurrence was noted as in the result only.