331 P.2d 526

In the Matter of the ASSESSMENT IN RESPECT TO PAVING DISTRICT NO. 5 OF THE CITY OF EUNICE, LEA COUNTY, NEW MEXICO.

V. S. GARY, Jr., Martha Fletcher, W. R. Ferguson, Joe E. Standefer, Assembly of God Church, Earl Sallee (Estate), J. W. Catron, Ted Wagoner, Fred D. Moore, O. R. Eubanks, Mollie Shelton, J. C. Hamlin, M. L. Goins, E. M. Rowland, Mrs. Buster Florence, Faugh H. Bowden, A. P. Mitchell, T. E. Hinman, R. C. Curry, R. C. Hayes, E. C. Hill, Mrs. E. C. Hill, W. L. Dunham, Don G. Smith, Mrs. H. E. Harris, Harry Beaird, Mrs. M. S. Berryman, Younger Bros., Inc., and Byron Hughes, Appellants,

v.

CITY OF EUNICE, LEA COUNTY, New Mexico, Appellee.

No. 6410.

Supreme Court of New Mexico.

Sept. 23, 1958.

Rehearing Denied Nov. 20, 1958.

Neal & Neal, Hobbs, for appellants.

C. N. Morris, City Atty., Eunice, John T. Watson, Sp. Asst. Atty. Gen., for appellee.

COMPTON, Justice.

This is an appeal from a judgment confirming a reassessment by appellee, City of Eunice, of appellants' property in what is known as Paving District No. 5 of the City.

In 1951 the Mayor of the City of Eunice requested the State Highway Commission to participate in the cost of paving Texas Avenue and Main Street from the railroad tracks to "O" Avenue in the City of Eunice. The State Highway Commission agreed to pave the above named streets and to pay one-third of cost thereof, provided the City would pay two-thirds of the cost.

On January 14, 1952, the City Council of Eunice adopted Resolution 82, directing Ashley G. Classen & Associates, Engineers, to make an estimate of the costs of the improvements and an estimate of the maximum benefits to be conferred on each parcel of property to be assessed with the costs of such improvements. But no such estimates were made and nothing further was done by the City in connection with these improvements until 1957 when directed to do so by the trial court. Nevertheless, in February 1952, the State Highway Department, relying on the City to make the assessment, called for bids and paved the streets in question.

On July 7, 1955, the State Highway Commission brought a declaratory judgment action, Cause No. 12926, against the City to determine its liability for two-thirds of the cost of the improvements, amounting to some $40,784.80. The trial court found for the Highway Commission and concluded:

"That the proceedings toward the assessment of abutting property for the improvements of Main Street and Texas Avenue in Eunice which were received, were abandoned and are void and a nullity within the meaning of Sec. 14–41–9 NMSA 1953."

The court also concluded as follows:

"That an obligation now exists on defendant City of Eunice to proceed in accordance with the Reassessment Statutes of New Mexico (Ch. 46 L. 1923, Secs. 14–41–9 to 14–41–22 NMSA 1953) by proper ordinance, assessment, and notice, to assess abutting property in proportion to the benefits received in the amount of $40,784.80, or in the amount of the actual value of such improvement at the time of its completion, in case such amount of $40,784.80 exceeds the actual value of such improvement, and to apply all amounts so received to the satisfaction of the obligation owing plaintiff State Highway Commission until payment in full shall have been made."

Thereafter, on December 6, 1956, a petition for order to show cause was filed by the State Highway Commission alleg-

ing that no action had been taken by the City as ordered by the court. After an order to show cause was issued, the City was directed to proceed forthwith by ordinance to make a new assessment in the amount of $40,784.80.

Pursuant to the order directing it to make a new assessment, on June 10, 1957, the City adopted Resolution 142 making a provisional order with reference to the improvement of Texas Avenue and Main Street. Thereafter Ordinances 143 and 144 were passed confirming the proceedings taken by it, creating Paving District No. 5 and ordering a reassessment, all in compliance with the judgment of the district court.

At this point appellants came into the picture as abutting property owners and protested the so-called reassessment, but were overruled. An appeal was taken by them to the District Court of Lea County where the action of the City was upheld. They now appeal to this court.

It is necessary first to dispose of the contention by the City that appellants are bound by the judgment in Cause No. 12926, the declaratory judgment action, under the doctrine of res judicata. Appellee's reasoning in this regard is that appellants had notice of the proceedings in Cause No. 12926 by virtue of notice of lis pendens which described the action and indicated the property which might ultimately be af-

fected by the judgment sought; further, that appellants did not move to intervene or ask the defendant City to appeal the judgment.

We find no merit in this contention. Appellants were neither parties nor privies to the action in Cause No. 12926, and accordingly, they are not bound thereby unless under the doctrine of virtual representation. Pioneer Irrigating Ditch Co. v. Blashek, 41 N.M. 99, 64 P.2d 388; see Belmore v. State Tax Commission, 56 N.M. 436, 245 P.2d 149 and Town of Atrisco v. Monohan, 56 N.M. 70, 240 P.2d 216.

The doctrine of virtual representation has no application in this case inasmuch as the interests of the City in Cause No. 12926 were not consistent with those of appellants. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741, 753; 30A Am.Jur., Judgments, § 405; 52 Am. Jur., Taxpayers' Actions, § 38. The City could "lose" in the declaratory judgment action, as it did, and yet the effect of the judgment would be felt only by appellants, abutting property owners. It seems self-evident that the interests of the parties were not similar or consistent in view of the fact that one is here as appellant, the other as appellee.

The present case does not come within the purview of the rule set forth in Floersheim v. Board of Commissioners, 28 N.M. 330, 212 P. 451. There we held that in

suits brought to determine a public right involving a matter of public interest, all citizens and taxpayers are parties to the proceedings by representation and are bound thereby. But in Cause No. 12926 appellants had a special interest entirely separate and distinct from, and in the final analysis adverse to, that of the City and other citizens thereof. Driscoll v. Board of County Com'rs of Ramsey County, 161 Minn. 494, 201 N.W. 945.

The determinative question in this case is whether Resolution 82, standing alone, and it must since no further proceedings were taken toward an original assessment, is sufficient to authorize a reassessment. We think not. Section 14–41–9, 1953 Comp., authorizing reassessments, reads:

"Whenever an assessment for * * local improvement of a public nature, which has heretofore been made * * has been * * * declared void and its enforcement * * * refused by the courts of this state, or for any cause whatever has been heretofore or may be hereafter set aside, annulled or declared void by any court, * * * shall, by ordinance, order and make a new assessment or reassessment * * *"

The Reassessment Statutes, Sections 14–41–9 through 14–41–22, NMSA, 1953, were not enacted for the purpose of establishing an independent method of creating special improvement districts in which abutting property owners might be assessed for improvements. The following portion of Section 14–41–18, 1953 Comp., makes this quite clear:

"* * * This act (14–41–9 to 14–41–22) shall not be construed as repealing or amending any provisions of existing law relative to original assessment for any municipal improvements referred to in section 1 (14–41–9) of this act, but shall only be construed to permit the making of a new assessment or reassessment when an original assessment has been heretofore, or shall be hereafter, declared to be void, and its enforcement under the charter, or laws governing any city, town or village, has been, or shall be, refused by the courts of this state * * *"

The above quoted statutes leave no room for doubt that as a prerequisite to a reassessment there must have been an original assessment and it must have been set aside by appropriate action. See 14 McQuillin, Municipal Corporations, 3rd ed. 1950, § 38.221. In this connection we agree with appellants that the trial court erred in sustaining a motion to strike evidence which was very probative of the fact that no original assessment had ever been made.

This is not a situation where there were errors or irregularities in making an assessment. Nor is it a case of non-com-

pliance with statutory mandates or one where the municipal body lacked the jurisdiction to make an assessment. It is simply a case where no assessment was ever made or even attempted. After adopting Resolution 82, the City simply abandoned any further efforts in regard to an assessment, perhaps deciding it was not advisable. This action, or to be precise non-action, was within the sound discretion of the City Council. See Shalit v. City Commission, 62 N.M. 55, 304 P.2d 578; Feldhake v. City of Santa Fe, 61 N.M. 348, 300 P.2d 934.

Appellee relies heavily on the case of Cowart v. Union Paving Co., 216 Cal. 375, 14 P.2d 764, 766, 83 A.L.R. 1185. However, California had no such statute as Section 14–41–18, supra. That court held that neither the provisional order nor petition method was required, while we are committed to the rule that one or the other must be followed in initiating public improvements of the kind mentioned. It is noteworthy that in the cited case the court stated the following:

"* * * There can be no question that the Legislature intended that a reassessment should be made in every instance where the work had actually been completed *and an assessment had been filed.* The positive statutory provision cannot be evaded. * * * (Emphasis ours.)

"* * * The essentials of jurisdiction to order a reassessment are that a public improvement has been made, *that an assessment has been imposed or attempted,* and that payment thereof has not been had. * * *" (Emphasis ours.)

In view of the fact that an original assessment was never made or even attempted, a reassessment was improper and unauthorized.

The judgment is reversed and the cause remanded with directions to set aside the purported reassessment.

It is so ordered.

LUJAN, C. J., and McGHEE and SHILLINGLAW, JJ., concur.

SADLER, J., dissenting.

SADLER, Justice (dissenting).

It is neither right nor just that the City of Eunice should be placed in the position of having and enjoying the paving improvement shown and, then, sending away empty handed a benefactor which had carried same to completion at its own expense, in the first instance. The benefactor had been promised and expected reimbursement for two-thirds of the cost, upon completion, only to find itself saddled with the whole of it with little hope of recovering any of it, in the end. Such is the likely result of the decision today handed down by the majority.

Undoubtedly, the legislature was moved by a desire to prevent this very thing when it enacted the reassessment statute, L.1923, c. 46 (1953 Comp. § 14–41–14) pursuant to which the reassessment here annulled took place. It is only where, due to some legal impediment, a city's effort to accomplish a described municipal improvement is about to abort, or for any cause whatever has been * * * "set aside, annulled or declared void by any court," that the reassessment statute comes into play.

It has impressed me the same rationale underlies the enactment of this statute as supports our decision in Shaw v. Board of Education, 38 N.M. 298, 31 P.2d 993, 93 A.L.R. 432, namely, a desire to avoid the unjust enrichment of one at the expense of another. And, where, as in this case, and in line with the statute's objective, there is respectable authority to support the trial court's decision, we should approve and follow it. We find such authority in Cowart v. Union Paving Co., 216 Cal. 375, 14 P.2d 764, 83 A.L.R. 1185.

The only reason given by the majority for declining to follow it arises on the presence in the act of certain language providing it shall not be deemed to repeal or amend any provisions of existing law relative to municipal improvements referred to in section one (1) of the act and the asserted absence of such language in the California statute on reassessment. The majority claim California had no such statute as our section 14–41–18. If this is a reference to California's reassessment statute as a whole, they are clearly in error. See Hillyer's Supplement Annotated (1923) Ch. 47, § 28, page 1482. The grounds for reassessment are almost identical with ours.

If, on the contrary, the majority limit their statement California has no such statute as ours to so much of section 14–41–18 as they quote disclaiming an intention to have any of the act construed as repealing or amending any provisions of existing law relative to original assessment for any municipal improvement, well and good. But what distinction does that afford? None whatever that I can see. It only emphasizes to my mind the absence of a valid reason for failing to follow the case as a precedent when a distinction without a difference is relied upon for failing to do so.

Furthermore, that the supposed distinction is one without a difference is clearly and demonstrably shown by the language of 1953 Comp. § 14–41–20 (1923, c. 46, § 12), in directing the provision for reassessment in any city charter shall be deemed as providing a *concurrent remedy* as against repealing any existing provision therefor. It reads:

"This act (14–41–9 to 14–41–22) shall not be construed as repealing the provisions now existing in any city

charter for the making of new assessments or reassessments, but shall be considered as providing a concurrent remedy in such cases. And any city whose charter provides for any such new assessment or reassessment may proceed either under such charter provisions or under this act."

Significantly, our legislature by one section of the act, 1953 Comp. § 14–41–22 (L. 1923, c. 46, § 14) declares:

"This act (14–41–9 to 14–41–22) being remedial in its nature, shall be liberally construed according to its true intent and purpose, to the end that real property actually benefited by local improvements shall be required to pay in full for the benefit thus conferred."

The State Highway Department in order to expedite its major objective of providing adequate state highways through our municipalities (compare, Farnsworth v. City of Roswell, 63 N.M. 195, 315 P.2d 839) on occasion assumes a substantial part of the cost of paving programs crossing city lines. The City of Eunice, it should in fairness be said, is not unmindful of its obligation in the premises and has sought advantage of a statute enabling it, as promised, to reimburse the Highway Department for the substantial aid thus afforded it. The distinction relied upon by the majority for refusing to follow Cowart v. Union Paving Company, supra, on al-most identical facts, is imaginary and unrealistic, in my opinion. It looks from this vantage point as if the State Highway Department, in final analysis, may have to bear the entire cost of the improvement in Eunice, a result never contemplated either by the city fathers, or the legislature, and truly a miscarriage of justice, if it occurs, as now seems likely.

The learned trial judge sensed this possibility and giving a construction of the statute, which finds support in a well reasoned opinion from a sister state, rendered what appeals to me as a truly righteous judgment, deserving affirmance. The majority think it should be reversed.

Strongly convinced otherwise, myself, I dissent.