260 P.2d 909

In re COX' ESTATE.

CAMPBELL v. ARMSTRONG.

No. 5634.

Supreme Court of New Mexico.

Sept. 2, 1953.

Jess R. Nelson, Truth or Consequences, for appellant.

Douglass K. FitzHugh, Truth or Consequences, for appellee.

LUJAN, Justice.

The claimant-appellee filed her claim with the administrator of the Estate of John Cox, deceased, alleging therein that the decedent was indebted to her for board and services performed at his instance in accordance to an oral agreement entered into by and between the decedent and herself. The administrator moved to disallow the same for the reason, as he claims, that it is barred by Chapter 66, Session Laws of 1947, being Section 33-814 of 1941 Compilation. The motion was denied and a trial was had, at the end of which, the issues were resolved in favor of appellee and the appellant appeals.

The trial court found that:

"No. 1. Pursuant to an understanding and oral agreement had and made between John Cox, now deceased, and Pearl Campbell, the claimant, in October, 1949, that she would move into his home, become and be his housekeeper, and look after and take care of him during his declining years and unto his death, and that he in turn would compensate her for such services and in particular would give or leave to her by deed or by his will the home property, house and lot, in which he lived at Hot Springs, New Mexico, the said Pearl Campbell did, on October 20, 1949, move into said home of John Cox, and take over as his

housekeeper, and continued as such and looked after and took care of him, preparing, cooking and serving his meals, nursing him in sickness, attending to his mending, washing and laundry and the care of the garden and chickens, being his maidservant and companion, and in general fulfilling and performing her duties and services under said agreement, until December 4, 1950.

"No. 2. John Cox assured the claimant that he would deed to her the house and property or that the same would become and be hers at his death, and that his children would honor his wishes and agreement in that regard; and in reliance upon such assurance and agreement the claimant undertook and performed said services and carried out the agreement on her part until December 4, 1950.

"No. 4. John Cox killed himself on December 10, 1950. He never paid the claimant anything for said services rendered by her, nor did he convey or leave to her by deed or will or devise the said property, nor did he make or sign any memorandum in writing of the said agreement.

"No. 8. Cox received benefits from the services rendered by the claimant pursuant to the agreement, and the worth or value of such services can be determined. Pearl Campbell also

received certain benefits as a result of the arrangement and agreement which are proper to be considered in computing the amount of the services. The reasonable worth and value of her services as determined by the court are $1540.00.

"No. 9. The termination of said agreement between decedent and claimant was not occasioned by any default, refusal or neglect on the part of claimant in the fulfillment of said agreement on her part."

Based upon the foregoing findings of fact the court concluded as a matter of law:

"No. 1. The claimant is entitled to recover against the estate of said decedent, upon a quantum meruit basis, the reasonable value of her services (this including board incidentally furnished by her); and the claim of the claimant, Pearl Campbell, should be allowed against the administrator and said estate for the amount of $1540.00 found as such reasonable value as aforesaid."

■ Neither of these findings, or others, is attacked by the appellant, and therefore are the facts upon which the question rests here, and are binding on this court. Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900; Wells v. Gulf Refining Co., 42 N.M. 378, 79 P.2d 921; Arias v. Springer, 42 N.M. 350, 78 P.2d 153; In re White's Estate, 41 N.M. 631, 73 P.2d 316.

Appellant's sole assignment of error is:

"1. The trial court erred in overruling and denying appellant's motion to disallow the claim, which was predicated on the grounds that the claim, as filed, was barred by New Mexico Laws 1947, Ch. 66, Sec. 1, being Sec. 33–814, New Mexico Statutes Annotated, 1941 Compilation, Supplement, for the reason that said claim as stated, is an attempt to effect a recovery against the estate or property of a deceased person by a claim founded upon an oral agreement by appellant's decedent to treat the claimant as an heir of said decedent."

The pertinent part of the act in question provides:

"No claim against the estate or property of a deceased person * * * shall be brought, had, maintained or allowed * * * where such claim is founded upon an alleged agreement by the decedent, express or implied, *to adopt the claimant, or to treat the claimant as an heir of said decedent,* unless the decedent shall have signed a written memorandum thereof * * *." (Emphasis ours.)

The agreement was not an unusual one. Its provisions were such that if claimant would take care of the promisor for the

remainder of his natural life, he would in turn deed to her or leave to her at his death a certain piece of real property. Does the Act prohibit a claim for reasonable value of her services rendered to carry out the agreement? We think not. Specific performance is not asked.

 "To adopt" means to take into one's family the child of another and give him or her the rights, privileges, and duties of a child and heir. An oral agreement to adopt will now support no claim against the promisor's estate. In the instant case there is no hint of an agreement to adopt.

 "To treat as an heir" is to deal with and conduct oneself towards a person as a recognized lawful owner of an interest (at least inchoate) in the whole of an estate, except as such interest may be limited or withdrawn intentionally—as by willing a different interest or by disinheriting. At the time said Act was introduced as a bill in the legislature a "treating as an heir" could be accomplished and result in a binding claim and charge against an estate without any memorandum as to such agreement or intention, as where a decedent generally, openly and notoriously recognized a person as his illegitimate child. The Act could operate in such a situation, but its companion Act, Chapter 112, Laws of 1947, accomplished a similar result directly. To agree to deed a certain piece of property to another is in no

sense equivalent to "treating that person as an heir." Whether during the promisor's lifetime or after his death, the Statute of Frauds takes care of that situation if the agreement be not in writing and signed by the party to be charged. It seems clear, then, that the claim here presented can fall under the ban of the Act only if it can be said that an oral agreement to devise specific property in return for services rendered is the equivalent of *an agreement to treat the claimant as an heir*. There is no hint in this case of an agreement to treat the claimant as an heir, when those words are fairly construed. A devisee or legatee, as such alone, is not an heir. The use of the word "heir" in a will or deed will not be construed to mean a devisee unless the intention of the testator or maker to embrace such meaning is made clear by the instrument.

 We must assume that the legislature means just what the words it uses mean, and that it chose its words advisedly to express its meaning, until the contrary clearly appears. We must assume also that the legislature well knew the rule that one who has performed all the conditions of a contract entitling him to receive a devise by will in compensation for his performance, may enlist the powers of equity in his behalf and have considered as made in his favor the will which ought to have been made, even in cases where no writing or memorandum of the agreement was made.

Did the legislature intend to nullify such contracts which for hundreds of years have been deemed valid, yes, have even the peculiar subjects of equitable favor, and all claims for reasonable compensation based thereon, unless the recipient of the benefits left his written and signed memorandum of the agreement? If so, the legislative intent so to do could have been made perfectly clear by the use of a few simple words. The legislature refrained from using those few words. Instead it used other words which cannot be said to refer to an agreement to make a will, except by a strained and unusual construction. It seems to us that this was intentional; that it was not the purpose of the legislature to change the age-old rule relating to the right to contract to make wills to certain intents, or to the right to recover for services rendered under contracts if they cannot be caused to be specifically performed. Of course, in all such cases, if there be no signed memorandum, the proofs must be clear and strong, but that has always been the rule in such matters.

The Act is intended to protect estates from claims that can be easily made but are hard indeed to defend against. But the agreement itself is not immoral or unlawful; it is not declared void. The claim based on it is struck down and disallowed only because the decedent neglected to make and sign a memorandum of it in writing. So to an extent the statute is penal in its nature. It must be given effect in every proper case. But its application should not be extended beyond its fair meaning.

The claim is not founded on that. The claim is for compensation for services rendered and promised to be paid for in some certain manner which agreement was lawful and valid; the manner of collecting cannot be now carried through according to the promise, but the worth of the services may be recovered.

We are of the opinion, and so hold, that the Act does not bar claimant's claim, and the district court did not err in so holding.

By the cross-appeal, appellee seeks a reversal of that portion of the judgment of the trial court which gave her the sum of $1,540, as the reasonable value of her services and board furnished by her to the decedent. The lower court in determining the amount due appellee by decedent, took into consideration the amount of board and services furnished by her to decedent as well as certain benefits which she received as a result of the arrangement and agreement, and so determined the amount due her by decedent as shown by finding No. 8, which was not attacked by appellee. Appellee also claims that the court erred in refusing to adopt certain requested findings of fact which were dia-

metrically opposed to Finding No. 8 referred to above. These requests were a challenge to the sufficiency of the evidence to support the above finding of fact. The facts thus found by the court are the facts to be reviewed, and if, as here, they are supported by substantial evidence they will not be disturbed by this court.

Finding no reversible error the judgment should be affirmed.

It is so ordered.

McGHEE, COMPTON and SEYMOUR, JJ., concur.

SADLER, C. J., absent from State and not participating.